**Charles F. CASH, Respondent,**

v.

**Charles John BOLLE, Jr., Appellant,**

and

**Delores Sanfilippo, Respondent.**

**No. 52251.**

Supreme Court of Missouri,
En Banc.

Jan. 8, 1968.

Rehearing Denied Feb. 12, 1968.

Thurman, Nixon, Smith & Howald, Jeremiah Nixon, Robert Lee Smith, Hillsboro, for plaintiff-respondent.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for appellant.

James A. Blackwell, St. Charles, for respondent Sanfilippo.

DONNELLY, Judge.

In this jury-tried action for damages resulting from vehicular collisions in Jefferson County, Missouri, which occurred on April 12, 1963, plaintiff, Charles F. Cash, received a verdict in the amount of $6,000 against defendant, Charles John Bolle, Jr., and defendant, Delores Sanfilippo, on her cross-claim, received a verdict in the amount of $12,000 against defendant, Charles John Bolle, Jr. Bolle appealed. We reverse and remand as to Cash's claim against Bolle, and affirm as to Sanfilippo's cross-claim against Bolle.

The collisions occurred on Highway 61–67, a four-lane roadway, with two lanes for northbound traffic and two lanes for southbound traffic. The northbound lanes were divided from the southbound lanes by a center line, but no median strip. Cash and Bolle were northbound, with Cash in the right northbound lane, and Bolle in the left northbound lane. Bolle was passing Cash. Sanfilippo was southbound, in the southbound lane nearest the center line. As Bolle and Sanfilippo approached each other, both crossed the center line. There is a conflict in the testimony as to which of these two automobiles *first* crossed the center line. Bolle and Sanfilippo collided, and Sanfilippo then collided with Cash.

Bolle contends that the trial court "erred prejudicially in giving plaintiff Cash's instruction No. 4, because it directed a verdict in favor of Cash and against Bolle, on a finding that only Mrs. Sanfilippo was negligent." Instruction No. 4, as given, reads as follows:

"Your verdict must be for plaintiff Charles Cash if you believe:

"First, defendant Delores Sanfilippo drove on the wrong side of the road, and

"Second, defendant Delores Sanfilippo was thereby negligent, and

"Third, such negligence directly caused or contributed to cause damage to plaintiff Charles Cash."

Instruction No. 4 properly should have read:

Your verdict must be for plaintiff Charles Cash *and against defendant Delores Sanfilippo* if you believe:

First, defendant Delores Sanfilippo drove on the wrong side of the road, and

Second, defendant Delores Sanfilippo was thereby negligent, and

Third, such negligence directly caused or *directly* contributed to cause damage to plaintiff Charles Cash.

Instruction No. 4, as given, was erroneous. Supreme Ct.Rule 70.01(b), V.A.M.R.; MAI No. 31.03, Instructions No. 4, 6 and 8. We must judicially determine its prejudicial effect. Supreme Ct.Rule 70.01(c), V.A.M.R. In Brown v. St. Louis Public Service Co., Mo.Sup., 421 S.W.2d 255, this Court said: "It must be recognized * * * that a system of instruction such as MAI is inherently standardized and inflexible. If this court is to make this system work, and perserve its integrity and very existence, we must insist that mandatory directions be followed and that the pattern instructions be used as written. Otherwise, as we quoted the special committee's report in our opinions in Motsinger v. Queen City Casket Co., Mo., 408 S.W.2d 857, 860, and Hunter v. Norton, Mo., 412 S.W.2d 163, 166: ' " * * * If counsel are permitted to 'improve' the approved instructions, even within the confines of specific precedents, the value of these instructions will be lost. Each such 'improvement' by one counsel will prompt an offsetting 'improvement' by his opponent and after a while the court will not be able to find the original with a divining rod." ' * * *

"It is our understanding that the bench and bar generally approve of MAI, have found it to be a distinct improvement over the old system of instructions and desire its continuation. We have confidence that the lawyers can and will utilize the system as it is intended. We have written at some length on the subject because we feel that, in fairness to bench and bar, we should make it crystal clear that 'To accomplish the purpose for which the forms were prepared, the courts must insist that they be utilized.' Motsinger v. Queen City Casket Co., supra, 408 S.W.2d l. c. 860.

"Accordingly, where there is deviation from an applicable MAI instruction which does not need modification under the facts in the particular case, prejudicial error will be presumed unless it is made perfectly clear by the proponent of the instruction that no prejudice could have resulted from such deviation."

We are of the opinion that under Instruction No. 4, as given, the jury could have found for Cash and against Bolle if they believed Sanfilippo negligent. The giving of Instruction No. 4 was error and prejudicial to Bolle on Cash's claim against Bolle.

The judgment on Cash's claim against Bolle must be reversed and the cause remanded for new trial. Other points briefed as to this judgment relate to matters which will not likely recur upon retrial of the cause and need not be discussed.

We next consider Bolle's assignments of error which may relate to the judgment on Sanfilippo's cross-claim against Bolle.

■ *Cash testified on direct examination, in part, as follows:*

"Q Did you see an automobile driven by the defendant Bolle, here?

"A Yes, I did.

"Q Tell the jury when you first saw that car.

"A He had passed me—just before we came up on to the curve he had passed me and he got about two to three car lengths ahead of me. * * *

"Q  And what lane did he pass you in?

"A  In the center lane next to the center line.

\*    \*    \*    \*    \*    \*

"Q  What did you see the Bolle car do then?

"A  I seen him swerve to his left.

"Q  Did you see whether his car crossed the center of the highway or not?  A  Yes, I did.

"Q  Did you see a car driven by Mrs. Sanfilippo?  A  Yes, sir.

"Q  Did you see that car before or after you saw the Bolle Car?

"A  I seen it after I saw the Bolle car.

"Q  Did you see the Sanfilippo car before or after you saw the Bolle car go across the center line?

"A  I seen it after I seen the Bolle car go across the center line towards his left.

"Q  Then what happened?

"A  Well, after I seen both cars then she came across—not straight across—on an angle across the highway into my lane."

*Cash testified on cross-examination*, in part, as follows:

"Q  (By Mr. Richeson)  Now, you said it was two-thirds of the way across the center line.  What do you mean by 'it'?

"A  The Bolle car was two-thirds of the way across the center line.

"Q  At the instant that you first saw the Sanfilippo car?

"A  Yes, sir.

"Q  And where was the Sanfilippo car at that time?

"A  It was moving across the center line.

"Q  How much of it was across the center line?

"A  At the time that I seen it it was two-thirds of the way."

*Bolle then sought to impeach Cash's testimony with his deposition,* wherein Cash had said:

" 'Question:  Where was her car, in what lane, when you first saw it?

"Answer:  It was in the center north-bound lane.' "

■  The trial court instructed the jury to disregard the deposition testimony. Bolle urges that the trial court erred.  He contends that in his deposition "Cash was saying that *all* of the Sanfilippo car was in the center northbound lane," and that this statement was inconsistent with the testimony given at the trial.  We do not agree. "Great latitude should be allowed in the cross-examination of a witness whose testimony contradicts his previous statements on a material issue."  Dempsey v. Horton, 337 Mo. 379, 386, 84 S.W.2d 621, 625.  However, on this record, a direct contradiction does not appear.  The "law is well settled that the extent and scope of cross-examination in a civil action is discretionary with the trial court and its rulings in regard thereto will not be disturbed unless an abuse of discretion is clearly shown."  Eickmann v. St. Louis Public Service Company, Mo. Sup., 323 S.W.2d 802, 807.  We find no abuse of discretion on the part of the trial court.

■  Bolle urges the trial court erred in permitting counsel for Sanfilippo to read certain testimony from Cash's deposition. The transcript on appeal reads as follows:

"Q  (By Mr. Blackwell)  Do you recall this question being asked you and this answer being given:

" 'Question:  Would you say you saw the Sanfilippo car about the same time he [Bolle] cut to the left or before or after?'

"MR. RICHESON:  Just a moment—

"THE COURT:  (interrupting)  May I see the deposition, please?

"MR. RICHESON:  I would like to ask that the question and answer be stricken, Your Honor.

"MR. BLACKWELL: 'Question: Would you say you saw—

"THE COURT (interrupting) Mr. Richeson, were you objecting to this?

"MR. RICHESON: Yes.

"THE COURT: The objection will be overruled.

"MR. BLACKWELL: 'Question: Would you say you saw the Sanfilippo car about the same time he [Bolle] cut to the left or before or after?

"'Answer: No; just a few seconds after he [Bolle] cut to the left, then she come. I seen her car.'

"MR. RICHESON: I move that that question and answer be stricken because of the Court's ruling with regard to the offer of testimony from the deposition which I made.

"THE COURT: Mr. Richeson, you were using a different question and answer in an attempt to impeach this witness on other evidence—questions and answers that were asked and given. The objection will be overruled."

We are of the opinion that the trial court did not err in this regard. The basis of Cash's claim against Sanfilippo was that Sanfilippo "drove on the wrong side of the road." Cash's deposition testimony tended to show that Sanfilippo "drove on the wrong side of the road" to avoid Bolle *after* Bolle entered her lane of traffic. Cash's deposition statement is an admission against his interest and was admissible at the trial. Brown v. Kroger Company, Mo. Sup., 344 S.W.2d 80, 82 [2].

■ Bolle urges the trial court erred in permitting counsel for Sanfilippo to read in evidence certain notations made and entered by Doctor Judge in the hospital records of Jefferson County Memorial Hospital. The transcript on appeal reads as follows:

"MR. BLACKWELL: Your, Honor, at this time I would like to read into the rec-

ord excerpts from the medical records of Mrs. Delores Sanfilippo, from the Jefferson Memorial Hospital at Festus, Missouri.

"MR. RICHESON: May I see them please?

"OUT OF THE HEARING OF THE JURY

"MR. RICHESON: Your Honor, we have a problem here in connection with counsel's proposal to read from the hospital records the statement of the attending physician, because a good many months ago demand was made on me to furnish plaintiff's counsel with a copy of Doctor Donnell's report of his examination, which they were entitled to, and when that demand was made on me, I immediately demanded of plaintiff's counsel that they furnish a report of their examining physician but they have failed to furnish it to this date, so that I believe that, under the rule, the statement of the attending physician should not be read from the hospital records.

"MR. BLACKWELL: I have in my file, if the Court please, correspondence sent from the Sanfilippo file from Earl Blackwell showing that Sam Richeson, Attorney for Charles Bolle, asked him to provide Sam Richeson with copies of any medical reports which the said Earl Blackwell had in his possession.

"I, too, have the file showing that Earl Blackwell said he had no medical records in his possession. These medical records were never in the possession of Earl Blackwell, nor Jim Blackwell. The defendant Sanfilippo's counsel have never had a medical report in their possession.

"MR. RICHESON: Let me correct counsel's statement about my demand. It was made by letter on November 23, 1964, in which I said: 'We enclose a copy of Doctor Donnell's report of examination of Delores Sanfilippo. Please forward copies of all medical information in your possession.'

"THE COURT: Did you, Mr. Richeson, in reply to that letter, receive any reply

from Mr. Earl Blackwell or Mr. James Blackwell?

"MR. RICHESON: Yes, I did. I received a reply dated November 24, 1964, from Earl Blackwell in which he said: 'Dear Sam: I have no written medical information in my possession concerning Delores Sanfilippo.'

"THE COURT: Do you have any reason to doubt the contents of that letter?

"MR. RICHESON: Nothing except the existence of the hospital records.

"THE COURT: Based upon the written demand and written reply of Mr. Earl Blackwell, the Court will overrule the objection."

Our S.Ct.Rule 60.01(b) (1), V.A.M.R., to which counsel for Bolle referred at the trial, reads as follows: "If requested by the party against whom an order is made under Rule 60.01(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions, together with like reports of all earlier examinations of the same conditions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party or person examined a like report of any examination, previously or thereafter made, of the same condition. If the party or person examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial."

It is similar to Rule 35(b) (1), Federal Rules of Civil Procedure, 28 U.S.C.A. In Weir v. Simmons, D.C.Neb.1964, 233 F. Supp. 657, at 660, the Court said: "There remains for consideration the scope of production under Rule 35(b) (1). The defendant has moved the court for production of reports from all doctors, dentists, clinics and hospitals which have made examinations of the plaintiff. Not all of these reports are within the ambit of Rule 35. The question arose in Butts v. Sears, Roebuck & Co., supra, D.C., 9 F.R.D. 58, as to what type reports a moving party could obtain. Therein the defendant had moved to require the plaintiff to produce certain reports of medical examinations, hospital records and physician's personal records. Judge Holtzoff held that this rule did not place a burden upon the plaintiff of procuring copies of hospital records or office records, but was limited to reports of medical examinations conducted at the request of the plaintiff. This court concurs with Judge Holtzoff's interpretation of the scope of Rule 35."

We need not decide whether Judge Holtzoff's interpretation, in its entirety, should be followed in Missouri. Only hospital records are involved on this appeal. We hold that under S.Ct.Rule 60.01(b) (1), supra, Sanfilippo was not required to procure and deliver copies of the hospital records. The trial court did not err in admitting the hospital records in evidence.

■ Bolle contends that Sanfilippo's $12,000 verdict is excessive. The evidence showed that she had a gash of four to six inches on her forehead, a laceration of the ear, and a cut on her eyelid. She suffered a broken right leg at the knee requiring surgery and the wearing of a cast for eight or nine weeks. Four ribs were fractured. She required traction and the wearing of a Thomas cervical collar for three months for injuries to her back, spinal column, and cervical area. At the time of trial she suffered from eruptions along the scar on her face, discoloration of the left cheek, was nervous, suffered from sleeplessness, had pain in the right leg, back, chest, and shoulders, and suffered headaches. Before the collision she was a "very healthy person." Her health is now so impaired that she cannot perform her duties as a housewife as well as before the collision. She is thirty-six years of age.

In Brown v. Moore, Mo.Sup., 248 S.W. 2d 553, at 559, the Court said: "* * * We must keep in mind that the question of the amount of damages is primarily for the jury. The jury's broad discretion in fixing the amount of the award is conclusive on appeal, especially where the verdict has the approval of the trial court, unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice; and that the broad discretion granted to the jury and to the trial court in weighing the evidence has been arbitrarily exercised and abused. * * *"

We do not consider the verdict excessive under the evidence in this case.

◼ Bolle urges the trial court erred in sustaining an objection to a portion of his counsel's argument. The transcript reads as follows:

"Mr. Nixon said: Richeson brought a doctor here! Yes, I did. I brought the doctor here because I wanted you to know exactly what was wrong with these people. Did they bring them? Did Blackwell bring a doctor? Did he bring Doctor Judge? No; he didn't bring Doctor Judge! Why didn't he? He didn't bring Doctor Judge because this jury is entitled to infer from Doctor Judge's absence that if Doctor Judge would have been here his testimony would have been unfavorable to Mrs. Sanfilippo and that he would have said that she had nothing wrong with her neck and nothing wrong with her back as a result of this accident. That's the inference you are entitled to draw from the absence of Doctor Judge here, and if that were not true these two men wouldn't be sitting there quietly now while I make that statement. That is—

"MR. BLACKWELL (interrupting) Your Honor, that's improper argument. Mr. Richeson—I understand that he has the right to comment but he doesn't have the right to impugn our integrity—'sitting there' and—

"MR. RICHESON (interrupting) I'm saying that I have a right to make that statement and—

"The COURT (interrupting): Counsel, you do not have the right to make a statement to say that you are saying something that you know is not correct. That part of the argument is objectionable and the objection will be sustained.

"MR. RICHESON: I say to you, ladies and gentlemen of the jury, that you do have the right to infer from the absence of Doctor Judge that if he came here his testimony would be unfavorable to Mrs. Sanfilippo.

"MR. BLACKWELL: I object to that, Your Honor, as being repetitious. He said it four times already.

"MR. RICHESON: I can say it as many times in one statement as I want to, if I want to.

"THE COURT: The objection will be overruled."

In Griffith v. Gardner, 358 Mo. 859, 879–880, 217 S.W.2d 519, 530–531, this Court said: "* * * We have repeatedly held the trial court is allowed wide discretion in ruling on the propriety of the arguments with respect to the question of prejudice. The standard of such propriety varies in each case just as the facts, the conduct of the parties, the surrounding circumstances, and the conduct of counsel also differ in each case. Unless we find the trial judge who is in a better position to rule on this question has clearly abused his discretion, we have always deferred to his judgment." We cannot convict the trial court of an abuse of discretion on this record.

We find no prejudicial error in Sanfilippo's case against Bolle. This judgment must be affirmed.

Judgment in favor of plaintiff Cash and against defendant Bolle reversed and remanded. Judgment in favor of defendant Sanfilippo and against defendant Bolle affirmed.

All concur.