**EMERY BIRD THAYER DRY GOODS CO., Respondent,**

v.

**J. C. NICHOLS CO., Appellant.**

**No. 53171.**

Supreme Court of Missouri,
En Banc.

May 13, 1968.

Joseph H. Moore, Glenn E. McCann, Kansas City, for respondent; Knipmeyer, McCann & Millett, Kansas City, of counsel.

Harry Weed, Kansas City, for appellant.

SEILER, Judge.

This is a suit to recover damages suffered by plaintiff when its merchandise received damage from smoke, oil, and soot as a result of the operation by defendant of certain heat salamanders while defendant landlord was in the process of building an addition to the premises leased by plaintiff. There was a verdict and judgment for plaintiff in the sum of $3,707.05, from which defendant appealed to the Kansas City Court of Appeals, where the judgment was affirmed. On defendant's application the case was by our order transferred here, largely because of a question involving an adaptation of an MAI instruction.

We are first required to set out the facts rather fully because it is urged that plaintiff made no submissible case. Defendant owned real estate, together with a store building located thereon, located at 400 West 47th Street, Kansas City, Missouri. It leased the building to plaintiff, to be used for the purpose of operating a retail department store. That lease was dated July 30, 1949, and was later amended. It was to operate, as amended, until December 31, 1964. A new lease was negotiated, October 20, 1960, but it was to operate from August 1, 1962 until July 31, 1982 and

the damage herein sued for occurred on or about March 4, 1962, which was prior to the effective date of the new lease.

Plaintiff alleged that, on or about March 4, 1962, defendant was in the process of re-modeling and building an additional wing to the existing building (which was the subject of the 1949 lease); " * * * that at said time and place defendant was making use of certain heating devices, known as heating salamanders, in the course of its construction operation; that the defendant negligently maintained and operated such heating salamanders so as to permit smoke to enter plaintiff's premises and cause damage; that the defendant knew or should have known that the use of such heating salamanders at such time and place was likely to cause smoke and soot to be distributed throughout the premises in use by plaintiff as a dry goods and general department store * * *." It alleged damage to its merchandise as a direct result of defendant's negligence.

■ Defendant generally denied the allegations of the petition, pleaded that any damage that may have been done to plaintiff's merchandise was caused by persons other than its employees, servants, or agents; that work was being done in accordance with the terms of its lease with plaintiff dated October 20, 1960; that plaintiff had assumed the risk of damage to merchandise; pleaded specific provisions of the lease of 1960 as a defense; that the lease of 1949 provided that defendant should not be liable for damages to plaintiff's property by defendant's negligence except by its "willful or gross negligence."

Plaintiff moved to strike references to the leases and for an order making defendant's allegations more definite and certain. The court struck from the answer all matter therein contained with reference to the language and provisions of the 1960 lease. It denied the remaining parts of plaintiff's motion. The 1960 lease had not become effective at the time of the alleged loss and it was, therefore, immaterial to any issue of the case. The court's action, as to that lease, was proper, rule 55.35, V.A. M.R.

Alfred R. Wallace, retired, a former vice president in charge of building and maintenance, testified to the effect that plaintiff was operating a retail department store in a building leased from defendant; that, in March, 1962, defendant was constructing an addition to the store building; that witness was stationed in the construction area in order to coordinate plaintiff's daily operations with the work of defendant; that it was cold and defendant had installed heating salamanders in the area under construction for its own benefit; that these were fired every morning and extinguished every night; that on March 4, witness was present when one salamander belched a large amount of smoke, which entered and permeated the area occupied by plaintiff's merchandise and sales rooms. He stated that a salamander is a circular metal tank, some 18 to 20 inches in diameter, 8 to 10 inches in height, with a stove pipe flue rising from its center to a height of 4 feet; that it is filled with kerosene and lighted by throwing a blazing paper down the pipe; that it is extinguished by capping the top of the pipe; that it frequently smokes when the fire is extinguished; that on March 4, 1962, one "just belched" smoke and "it kept coming"; that, after this occurrence, the merchandise in the store was covered with oily soot, was stained and dark, felt and smelled of oil and smoke.

Forrest Brunson was in charge of plaintiff's insurance department. He stated that, near March 4, he inspected some merchandise for plaintiff's "Plaza" store, at its downtown store; that it was saturated with smoke; that he supervised inventorying it in the regular course of business, making a list of the various damaged articles; that he was assisted by buyers of plaintiff who were familiar with the various categories of merchandise involved, and by a representative of two insurance adjusters and a representative of the salvage company; that the damaged merchandise was cata-

logued; that it was valued at its retail price less 40% (the average mark-up); that the value of the damaged merchandise was $6,347.37.

G. W. Barnes, an experienced insurance adjuster, inspected the damaged goods in the store and stated the articles smelled of kerosene; that the stains would smear on touch; that such merchandise was taken to the downtown store and, eventually to Underwriter's Salvage Company; that plaintiff received $2,642.17 for the salvage.

Kenneth Riley, another insurance adjuster, visited and inspected the store in March. He stated that he observed flecks of oily soot on garments and on the top of showcases; that, in the construction area, he saw a number of salamanders in operation; that they were burning oil; that he saw smoke emanating from them; that the air was heavy with smoke; that this was on the same floor where plaintiff's damaged merchandise was located, but in a different area.

John M. Heiman, manager of Underwriter's Salvage Company, which is owned by various insurance companies, stated that his company handled the salvage for the benefit of plaintiff; that the merchandise was dark, black, discolored; and that plaintiff received $2,642.17 for it.

By an interrogatory and the answer thereto, offered in evidence by plaintiff, defendant stated it was the general contractor for the remodeling and construction work being done.

Defendant offered the testimony of its labor foreman, Marvin Hendershot, who stated that he was present when a salamander which had been lighted by someone other than defendant's employees before defendant's men came to work, was accidently knocked over when a group of workers other than defendant's employees were around it and was caused to emit smoke; that the smoke "seemed to settle at the top * * * of the ceiling * * * and then in a few minutes it vanished"; that

the salamanders were the property of defendant and were attended by its employees; that defendant told the various contractors defendant would "always light the salamanders and take care of them and for them not to bother them"; that if they were properly capped, to extinguish the fire, they did not smoke; that, ordinarily, it took ten minutes to extinguish the blaze; that, if they were not properly capped, they might burn all night. Defendant also offered evidence that the group of employees around the salamander when it was knocked over were employees of Westinghouse Electric Corporation, with which plaintiff had a contract for installation of escalators, which was not part of the work being done by defendant.

Defendant offered to read in evidence portions of the 1949 lease which, with their respective marginal headings, were as follows:

Paragraph 15, "Examination of Premises", providing, in part:

"It is understood and agreed that all property kept, stored or maintained in the demised premises shall be so kept, stored or maintained at the risk of the tenant only."

Paragraph 19, "Moving of Furniture, Damages, Etc.", providing, in part:

"The landlord shall not be responsible to the tenant for any loss of property from said leased premises, or any damage done to furniture or effects belonging to said tenant, however occurring."

Paragraph 28, "Heat", providing, in part:

"The landlord shall not be held responsible for damage caused by the breakdown of the heating plant or other accidents or occurrences not the result of its willful or gross negligence or of its employees."

The court sustained plaintiff's objection to this offer for the stated reason that said language constituted no defense to this claim for damages.

Defendant's first point is that the court erred in overruling its motion for a directed

verdict, and its motion for judgment. Under A of this heading it says:

"(A) There was no evidence from which the jury could have found that defendant 'negligently permitted' salamanders to smoke. There was no showing (1) that salamanders do not smoke as a normal consequence of their use, (2) that defendant knew or should have known on March 4, 1962, that salamanders were smoking, (3) that defendant had the duty and power to prevent the salamanders from smoking, or (4) that salamanders were smoking on March 4, 1962. The only person to have known that the salamanders ever smoked was the vice-president of plaintiff."

The above statements require but little comment. The evidence has been reviewed in detail. Mr. Wallace stated that one of the salamanders belched smoke and that it kept on coming, on March 4. He also stated it (or they) smoked at other times. One of the insurance adjusters inspected the store March 4 or 5. He "found a number of oil heaters called salamanders burning a distillate fuel" in the construction area on the same floor where the damage occurred and "the air was quite heavy with the smoke of these units". This testimony went in without objection. Defendant's Mr. Hendershot stated the salamanders were lighted each morning and extinguished each night; that they smoked sometimes when they were being extinguished; that if not properly capped, they would burn all night. It might be inferred that if not properly capped they might smoke all night. Defendant had notice that the salamanders smoked, that, unless properly maintained, they would often smoke, and that, on at least one occasion, one of them smoked excessively.

■ While there is no evidence tending to prove that defendant could have prevented the salamanders from smoking, the evidence is that it continued to use them. From the evidence it might be inferred that defendant knew the salamanders emitted oily smoke which permeated plaintiff's store, and which might cause damage to its property. The jury could have so found. It is sufficient if the circumstances shown were such as to put an ordinarily prudent person on notice that damage to plaintiff's property was likely to occur. Gorman v. St. Louis-San Francisco Railroad Company (Mo.Sup.) 427 S.W.2d 390, decided April 8, 1968; Rauch v. McDonnell Aircraft Corp. (Mo.App.) 303 S.W.2d 226, 231. Plaintiff stored and sold women's apparel in premises adjacent to the construction area with opening between the two areas. Quantities of oily smoke and soot would more likely damage such merchandise than it might if it were of a different type, for example, hardware. See Gold v. Heath (Mo.Sup.) 392 S.W.2d 298, 303.

Defendant's paragraph B of point one is so nearly identical with paragraph A that it requires no further comment. It, too, is ruled adversely to defendant.

In its point II defendant challenges the sufficiency of the proof of the market value of the damaged property before and after the damage occurred. Defendant says that there is no substantial evidence from which the jury could have determined the amount, if any, of damages to plaintiff without resorting to guesswork, speculation, or conjecture.

■ Plaintiff's exhibit No. 1, consisting of 20 pages of itemized merchandise with the retail value thereof, was introduced in evidence. The total retail value projected is $10,568.78. It was shown to have been made by men experienced in inventorying damaged merchandise of this character, and this inventory was made by plaintiff's direction, in the regular course of its business. There was testimony to the effect that the wholesale value of the merchandise was 40% less than the retail value. The wholesale value was established by substantial evidence, as was the amount actually received by plaintiff as the fair value after it was damaged. No substantial evidence contrary thereto was shown. Much of the evidence above men-

tioned was received without objection and in all, it was sufficient for the jury to arrive at its verdict for plaintiff on the basis of the long established rule that the measure of damages for personal property is the difference between the reasonable market value before and after the injury.

Defendant urges error based on the court's refusal to receive in evidence paragraphs 15, 19, and 28 of the 1949 lease, as not constituting a defense to this claim, which is based on negligent acts of the lessor. Here, as in Rock Springs Realty, Inc. v. Waid (Mo.Sup.) 392 S.W.2d 270, 272, 15 A.L.R.3d 774, " * * * It is obvious that this lease, on a printed form with sundry and extensive protections to the lessor, was a 'landlord's' lease, namely, that it was prepared and presented by the lessor. We note this for whatever it may be worth. * * *"

The lease before us has some three pages, legal size, of numbered paragraphs in rather small print, setting out detailed terms and conditions. Each paragraph has a subject heading and those pertaining to paragraphs 15, 19, and 28 have been set forth above. Without taking the space to quote each paragraph in full, the strongest language against plaintiff appears in paragraph 28, but that paragraph is under the heading "Heat" and certainly does not in so many words release the lessor from liability for the sort of occurrence involved here. Paragraph 28 indicates an intent to hold the landlord blameless as to one class of negligence connected with its heating plant, but not for all negligence.

■ The present claim did not arise from any malfunction of the regular heating plant in the building. It arose from an operation being conducted outside the lease premises, by which, under plaintiff's evidence, smoke entered the leased premises from the outside, damaging plaintiff's wares. Assume one of defendant's employees negligently drove a heavily loaded truck through plaintiff's ground floor show windows. Surely it could not reasonably be

considered the language of paragraph 28 would exempt defendant for this sort of loss. Yet such would be the logical extension of defendant's contention that the words, "or other accidents or occurrences not the result of its willful or gross negligence or of its employees" apply to losses beyond those connected with breakdown of the regular heating plant.

On the facts before us therefore, we are unable to extend the provisions of the 1949 lease relied upon by defendant so as to constitute a defense to plaintiff's claim and rule that the trial court. did not err in sustaining plaintiff's objections to the offer of such provisions.

Error is predicated on the court's authorization of an amendment to plaintiff's petition to include a prayer for interest, and in giving instruction No. 9, submitting that issue. The jury returned the following verdict:

"We the jury, find the issues in favor of plaintiff and assess its damages at $3,-707.05, and assess interest at $852.62, being the sum total of $4,559.67."

■ The court, in considering defendant's motion for new trial in regard to error committed by submission of the issue of interest, ordered plaintiff to remit the sum of $852.62, included in the verdict for interest, which was done. The court set aside the judgment and entered a new judgment accordingly. The procedure was proper. Bush v. Brandecker, 123 Mo.App. 470, 100 S.W. 48, 50. The issue of interest was erroneously submitted and the verdict was excessive in the amount of interest allowed, but the remittitur corrected this error. We cannot say that there was prejudicial error affecting the merits of the case in this regard.

And on the retrial which we conclude must be ordered, for reasons set forth below, we see no need for a retrial on the issue of damages. There actually was not much real dispute here as to the extent of the damages. We see no need to take the

time of the court, parties, jurors, and witnesses in relitigating this aspect of the case.

The case must be remanded, for a new trial on the issue of liability only, because of error in plaintiff's instruction No. 3, which purported to be based on MAI 17.01 and read as follows:

"Your verdict must be for plaintiff if you believe:

"First, defendant maintained and operated heating devices, referred to in evidence as heating salamanders, and

"Second, defendant negligently permitted said salamanders to emit smoke and said smoke to enter plaintiff's premises, and

"Third, as a direct result of such negligence plaintiff's property sustained damage."

■ We are unable to approve the adaptation thus attempted of MAI 17.01. Plaintiff should have submitted, first, the conduct of defendant of which plaintiff complained—namely, the maintenance and operation by defendant of salamanders so as to permit smoke to enter plaintiff's premises; second, that defendant was thereby negligent, and third, that as a direct result of such negligence plaintiff sustained damage. As submitted under No. 3, however, the jury could have found against defendant for whatever reason the salamanders smoked, just so defendant negligently permitted it, although the negligent act pleaded and relied upon by plaintiff presented a much narrower issue—namely, maintenance and operation of the salamanders by the defendant, Gousetis v. Bange (Mo.Sup.) 425 S.W.2d 91, decided March 11, 1968; see, also Saunders v. Crusader Life Ins. Co. (Mo.App.) 421 S.W.2d 563, 567; Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co. (Mo.App.) 407 S.W.2d 622, 630. The instruction as adapted did not, therefore, fairly submit the issues, contrary to the requirements of rule 70.01(e), dealing with instances where an MAI instruction

must be modified; nor does it follow the guide for the form of instructions where MAI is not used, in the instances pointed out above, and, further, on retrial, the final sentence referring to "plaintiff's property" sustaining damage, should be changed to "the plaintiff sustained damage".

The judgment is reversed and the cause is remanded, with directions to grant a new trial on the issue of liability and depending upon the outcome of that trial, to enter judgment for plaintiff in the amount of $3,707.05, or judgment for defendant.

All concur.