Francis A. NEWSOM, Plaintiff-Appellant,

v.

Arthur W. CROCKETT, Defendant-Respondent.

No. 25060.

Kansas City Court of Appeals, Missouri.

April 6, 1970.

McLaughlin & Vanet, M. Randall Vanet, Kansas City, for plaintiff-appellant.

Deacy & Deacy, Edward W. Mullen, Joseph W. Amick, Kansas City, for defendant-respondent.

MAUGHMER, Commissioner.

This case came to the writer quite recently on a reassignment. It is a suit to recover damages for personal injuries. The plaintiff Francis A. Newsom and his wife had, as paying guests, spent the 1966 Labor Day weekend at Natures Haven Resort. Natures Haven Resort is located at Sunrise Beach, Camden County, Missouri, in the Ozarks, and was owned and operated by the defendant Arthur W. Crockett and his wife, Betty Crockett, who was a named defendant until just prior to submission when plaintiff dismissed as to her.

In addition to several separate living quarters, this particular resort included a boat shed where regular guests over the summer season might, for a stipulated charge, store their boats. This enabled these patrons to transport their boats and trailers (if they had trailers) to this vacation spot once in the spring, and then home in the fall, rather than haul them back and forth every weekend.

The plaintiff owned a boat and trailer. The boat was a home-made inboard, sixteen feet long, and equipped with a 1952 Ford engine. It had been, prior to the Labor Day weekend, stored in defendant's boat shed. It had been taken to the lake at the beginning of this weekend and on the afternoon of September 5, 1966, plaintiff, with the assistance of the defendant and defendant's tractor, was in the process of moving the boat from the lake to the storage shed.

The defendant owned a Fordson tractor which he used in moving boats from the lake to the shed. On the day in question the defendant hooked plaintiff's trailer to his tractor, pulled the trailer to the lake, and helped plaintiff load the boat onto the trailer. Then they moved to the storage shed. In this proceeding defendant op-

erated the tractor while plaintiff guided, by voice and hand signals to defendant, until finally the boat was satisfactorily located within the shed. Plaintiff blocked the wheels of the trailer to keep it from rolling forward and then walked between the tractor and boat preparatory to unhitching the trailer. Both plaintiff and defendant are in agreement as to what occurred up to this time.

Plaintiff in describing the tractor hitch said "the hitch on the tractor is a metal ball that's welded onto the grill. * * * Now the trailer hitch is the socket for that ball and on the back side there is—approximately half of the ball is movable. As you pull this lever up, this little safety lever, the back portion of this will move away from the ball and you can lift it up, providing there is no pressure either way . on the socket." Plaintiff was trying to unhitch the trailer—had his left hand under the tongue but between the tongue and the safety chain when the tractor moved, putting pressure on the hitch including the safety chain, catching the end of plaintiff's left index finger, mashing and cutting it off. The end of the finger was amputated at the distal digit or first joint.

Plaintiff testified that when the boat was properly placed and he went between the tractor and trailer preparatory to unhitching, he said to defendant: "O. K. hold it." Defendant testified that he saw plaintiff raise the bow of the boat and that plaintiff called: "O. K." and defendant then started to move the tractor. Mr. Gary Osborne, son-in-law of defendant, was about twenty feet away at the time of the accident, and was observing the proceedings. He said he heard defendant say: "Are you ready, Frank?" and heard plaintiff respond: "Yes." and that then the tractor moved. He also said he heard plaintiff call "O. K." but denied hearing him say "Hold it.". There were no other witnesses to the casualty.

We need not detail the medical evidence except to say that there was ample proof that plaintiff lost the first third of his finger, incurred substantial medical expenses, suffered a permanent injury and sustained damages.

The suit, brought originally against both Arthur W. Crockett and Betty Crockett, his wife, alleged the defendants were guilty of failure "to exercise ordinary care", "endangered the life and limb of plaintiff", "caused the tractor to contact plaintiff", "failed to prevent the injury", "moved the tractor without being first certain plaintiff was in a position of safety and moved the tractor suddenly and with a jerk".

Defendant denied any negligence on his part and asserted that plaintiff's injuries, if any, resulted from his contributory negligence. After all the evidence had been heard plaintiff dismissed as to the defendant Betty Crockett. There was a ten-member verdict for the defendant. Judgment was entered accordingly. Plaintiff's after-trial motions were overruled and his appeal has been duly perfected.

On the appeal plaintiff presents three assignments of error. In one point plaintiff charges that Instruction No. 2 which was given, constitutes a prejudicial deviation from MAI 11.02 I which he says should have been given. We set forth Instruction No. 2 in full.

*"Instruction No. 2*

"The term 'negligence' as used in these instructions means the failure to use (*ordinary care which means*) that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." (Italics and parentheses are ours.)

MAI 11.02 I is exactly the same except for the four words (ordinary care which means) which were added in No. 2 and which we in the above copy have italicized and placed in parentheses. It is of course true that when an applicable MAI instruction exists it must be given, or if the same is modified in any particular the

burden is on the modifier to show that no prejudice was generated thereby. Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255. In our opinion the added words do not change the meaning, cannot reasonably be understood to have done so, do not constitute a prejudicial deviation or amount to reversible error.

■ Plaintiff's assignment number two also charges a prejudicial deviation from MAI as to given Instruction No. 5. Plaintiff says that in this instruction defendant "personalized himself only by name instead of using the term defendant." Instruction No. 5 as given, is as follows:

"Your verdict must be for the defendand whether or not Mr. Crockett was negligent if you believe:

First, plaintiff either:

failed to unfasten the safety chain before unhooking the trailer, or

indicated to Mr. Crockett that it was safe to move the tractor; and

Second, plaintiff's conduct in either respect submitted in paragraph First was negligent; and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained."

Appellant says it was prejudicial for defendant to use his name "Crockett" instead of the word "defendant" and that it was especially prejudicial to refer to himself as *"Mr.* Crockett" while designating Mr. Newsom only as "plaintiff". We note and again comment that Mrs. Betty Crockett was a defendant until after the close of all of the evidence. Unquestionably the instruction had been drawn while Mrs. Crockett was a defendant. However, that fact would probably make no difference if the use of defendant's name could reasonably have instilled prejudice in the minds of the jurors. It is our opinion that it did not give rise to any such prej-

udice, does not amount to prejudicial error and cannot be reasonably so ruled. In Boll v. Spring Lake Park, Inc., Mo., 358 S.W. 2d 859, plaintiff's verdict directing instruction referred to "defendant corporation" instead of "defendant". The court held that the jury was told nothing they did not already known, that the slight deviation was not prejudicial and did not amount to prejudicial error.

■ Plaintiff's other assignment is that there was no competent evidence of record to authorize a submission of contributory negligence and that such submission gave the jury a roving commission. This issue was submitted to the jury by Instruction No. 5 which we have already incorporated herein in its entirety.

Contributory negligence was well defined when this court in Rader v. David, Mo.App., 207 S.W.2d 519, 523, said:

"* * * Contributory negligence is a want of due care on the part of a plaintiff claiming to have been damaged by the actionable negligence of another, combining and concurring with that negligence, and contributing to the damage as a proximate cause thereof, without which such damage would not have occurred. * * *" (Citing cases.)

Instruction No. 5 authorized the jury to find contributory negligence here if plaintiff either "failed to unfasten the safety chain before unhooking the trailer" or "indicated to Mr. Crockett that it was safe to move the tractor" and such conduct was negligent, and directly caused or contributed to cause plaintiff's injury and resultant damages. Generally two procedures were available in unhooking the trailer from the tractor—either unhook the safety chain and *then* unhook the trailer latch, or do it vice versa.

The defendant called as an expert Mr. Edward H. Steiger, an employee of Croft Trailer Rental Company. Mr. Steiger said he had "hooked up" and "unhooked" trailers five days per week for eight years.

He said the simple and ordinary way of unhooking a tractor from a vehicle it is towing is to "disconnect lights, then safety chain, and then the coupler". For a person to "uncouple" with the fingers of one hand between the loose safety chain and the vehicle tongue, and then release the hitch with the other hand would always be dangerous and would almost certainly result in injury if the tractor moved, thereby pressing the hand or fingers between the vehicle tongue and the tightened safety chain. Defendant testified that it was standard procedure to unhook the safety chain first. Plaintiff said he had on numerous occasions done it the other way.

Plaintiff says the submission authorizing recovery if plaintiff first failed to unfasten the safety chain is an incorrect statement of the Missouri law, and if it is not an incorrect statement, then defendant was entitled to a directed verdict. We do not agree. Even though it be undisputed that plaintiff did not unhook the safety chain first, still in our opinion it was for the jury to decide if such procedure under the evidence here, constituted negligence and directly caused or contributed to cause the accident. Our Supreme Court en Banc in Thompson v. St. Joseph Ry., Light, Heat & Power Co., 345 Mo. 31, 131 S.W.2d 574, 581, considered this matter when it quoted with approval as follows:

"* * * 'Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might reasonably draw different conclusions from them. * * *'"

Defendant said he could not see when plaintiff unhooked the trailer hitch. Both he and his son-in-law, the witness Osborne, said plaintiff called, "O. K." before defendant moved the tractor. Plaintiff admitted he said "O. K." but said he followed with an admonition to "Hold it." These rather divergent recitals on this very pertinent point presented a fact issue for the jury in its determination as to whether or not plaintiff had "indicated to Mr. Crockett" it was safe to move the tractor, as authorized by the instruction.

In our opinion reasonable minds might conclude that the only reasonably safe and proper way to unhook a trailer would be to first unfasten the loose safety chain and then undo the tractor hitch. Certainly this would be so where undoing the hitch first meant leaving the fingers of one hand between the tongue and the loose chain so that a movement of the tractor would press the safety chain against the tongue with the fingers in between.

Plaintiff relies upon Hough v. Rapidair, Inc., Mo., 298 S.W.2d 378 and Gregorc v. Londoff Cocktail Lounge, Inc., Mo., 314 S.W.2d 704. In the first case, two airplanes collided in midair. The submission was for failure to operate in the ordinary traffic pattern. A new trial was awarded when close examination of the record did not reveal any definite and positive testimony of such failure. In Gregorc, plaintiff was shot by a patron in defendant's cocktail lounge. Contributory negligence was submitted on "failure to warn plaintiff" or "eject the unruly patron". A new trial was awarded after a plaintiff verdict because the court concluded that (1) no negligence could flow from the defendant's failure to warn or eject under the evidence, and (2) the instructions should have contained a requirement that plaintiff was without knowledge of the dangerous situation. Neither of these cases presents a factual basis similar to ours, nor are they in point as to the errors assigned by the appellant on this appeal. We hold that in the case before us the question of contributory negligence was for the jury and that it was properly submitted. We also find that appellant's complaints as to Instructions No. 2 and No. 5 are without sufficient merit to constitute reversible error.

Plaintiff has shown no reversible trial error. Therefore the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGH-MER, C., is adopted as the opinion of the Court.

CROSS, J., and PHIL H. COOK, Special Judge, concur.

HOWARD, J., not participating.

SHANGLER, P. J., not participating because not a member of the Court when case was submitted.