**Bettie BRITTAIN, Plaintiff-Appellant,**

v.

**Janet CLARK and Ira Pete Bonds, Defendants-Respondents.**

No. 8967.

Springfield Court of Appeals, Missouri.

Dec. 23, 1970.

Keathley & Little, Poplar Bluff, for plaintiff-appellant.

Hyde, Purcell & Wilhoit, Poplar Bluff, for defendant-respondent Clark.

Rader & Grimm, Cape Girardeau, for defendant-respondent Bonds.

TITUS, Presiding Judge.

In sustaining defendants' motions for a new trial "on all issues," the Circuit Court of Butler County specified "of record"

(Rule 78.01) that it was doing so because plaintiff's verdict directing instructions numbered 2 and 3 "are erroneous in that they both deviate substantially, and to prejudice of both the defendants from the forms provided in M.A.I." Being aggrieved by this deprivation of the $15,000 verdict-judgment that had been returned and entered in her favor, plaintiff appealed and we affirm.[1]

The October 1968 casualty in question occurred at nighttime where north-south Highway 51 and east-west Highway 72 intersect at right angles in Bollinger County, Missouri. Plaintiff was a front-seat passenger in a Ford driven north on Highway 51 by defendant Janet Clark; defendant Ira Pete Bonds was operating his Mercury westward on Highway 72 when the front of it collided with the right side of the Ford. The paved surfaces of the roads are 18 to 20 feet wide, but at their crossing the two highways "fan out to one hundred and eighty feet" to form a lozenge-shaped intersection. A stop sign, intended for observance by northbound motorists, was located on the east side of Highway 51 some 130 feet south of Highway 72. In fine, the most favorable evidence to plaintiff disclosed that defendant Clark "drove straight through the stop sign [and into the intersection] without stopping," and that although defendant Bonds could have stopped "within twenty feet * * * [i]f [he] had known [defendant Clark] was coming across," defendant Bonds did not swerve the Mercury nor apply its brakes to create any skid marks until the Mercury was nine feet shy of the point of impact.

Instruction No. 2 charged the jury to find for plaintiff and against defendant Janet Clark "if you believe: First, defendant Janet Clark either: failed to stop at the stop sign on Highway 51 at the intersection of Highway 51 and Highway 72, or failed to yield right of way, and Second, defendant Janet Clark's conduct in any one or more of the respects submitted in Paragraph First was negligent, and Third, such negligence directly combined with the acts of defendant Ira Pete Bonds to cause damage to plaintiff Bettie Brittain. PLAINTIFF MAI—17.02 19.01 Modified."

Instruction No. 3 told the jury to find for plaintiff "and against defendant Ira Pete Bonds * * * if you believe: First, defendant Ira Pete Bonds either: failed to keep a careful lookout, or defendant Ira Pete Bonds knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, swerved, slackened his speed, slackened his speed and swerved, and thereby have avoided the accident; but defendant Ira Pete Bonds failed to do so, and Second, defendant Ira Pete Bonds conduct in any one or more of the respects submitted in Paragraph First, was negligent, and Third, such negligence directly combined with the acts of defendant Janet Clark to cause damage to plaintiff. Plaintiff MAI–17.02, 19.01 Modified."[2]

---

1. References herein to MAI, unless stated otherwise, are to the 1964 edition; references to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and to RSMo 1969, V.A.M.S.

2. We are not advised what particular deviations from MAI the trial court considered to be prejudicially erroneous. Aside from the special complaints posed by defendants in their briefs, infra, we observe, sua sponte, the omission of two commas from paragraph Second of Instruction No. 2 which appear in MAI 17.02 and the addition of three commas to paragraph First in Instruction No. 3 which are missing from MAI 17.04. The word "the" is absent from the phrase "failed to yield the right of way" in paragraph First of Instruction No. 2 as written in MAI 17.08. Also, the noun "Bonds" is not possessive in paragraph Second of Instruction No. 3 and the word "paragraph" is capitalized in paragraph Second of both instructions, all contrary to the mode adopted in MAI 17.02. If these observations be considered a picayune exercise, the interested reader is referred to Jackson v. Cherokee Drug Company, Mo.App., 434 S.W.2d 257, 263(6, 7) regarding extra commas,

Ere proceeding to specifics, it is well to note pertinent rudiments which necessarily accompany a review of instructions since the advent of MAI. For our purposes here, we consider two categories of instructions. First, there is the *applicable* instruction to be found in MAI, and second, the almost-applicable instruction in MAI which must be modified in some respect to fairly submit the issues in a given case. The first classification is governed by Rule 70.01(b); the second falls within the jurisdiction of Rule 70.01(e) (Slagle v. Singer, Mo., 419 S.W.2d 9, 13), and in any event "[t]he giving of an instruction in violation of the provisions of [Rule 70.01] shall constitute error, its prejudicial effect to be judicially determined." Rule 70.01 (c). Elaborating on Rule 70.01(b), the courts have repeatedly stated that the system of instructing under MAI is inherently standardized and inflexible, that prejudicial error will be presumed if a change is made to an applicable instruction in MAI, and that the burden will be on the proponent of any modification of an applicable MAI to show that no prejudice was generated by the deviation. Brown v. St. Louis Public Service Company, Mo. (banc), 421 S.W.2d 255, 259(3); Aubuchon v. La-Plant, Mo., 435 S.W.2d 648, 652–653(9); Newsom v. Crockett, Mo.App., 453 S.W.2d 674, 676–677(1).[3] Specifically, Rule 70.01

(e) states that "Where an MAI must be modified to fairly submit the issues in a particular case, * * *, then such modifications * * * shall be simple, brief, impartial, free from argument, and shall not submit to the jury * * * detailed evidentiary facts." [To the same effect and applicable to all instructions see Rule 70.-01(a)]. In expounding Rule 70.01(e), proponents of modifications have been amply warned to avoid submission to the jury of detailed evidentiary facts (MAI–1964, p. XXXII; MAI–1969, p. L), and that it is not necessary that conceded or undisputed facts be included in a modified MAI (Young v. Frozen Foods Express, Inc., Mo. App., 444 S.W.2d 35, 40–41(5, 6); Epps v. Ragsdale, Mo.App., 429 S.W.2d 798, 802), for the purpose of instructing under MAI is to submit only ultimate issues—not evidentiary details. Zipp v. Gasen's Drug Stores, Inc., Mo., 449 S.W.2d 612, 617(3); Scheele v. American Bakeries Company, Mo., 427 S.W.2d 361, 366(7).

*Re: Instruction No. 2*

As narrated in her brief, it is defendant Clark's position that "Instruction No. 2 violates [Rule 70.01(a)] in setting out that 'First, defendant *Clark neither:* failed to stop at the stop sign on Highway 51 *or* at the *Intersection* of Highway 51 and *72.*'[4]

---

and to Chappell v. City of Springfield, Mo., 423 S.W.2d 810, 811(2); Johnson v. West, Mo., 416 S.W.2d 162, 164(1, 2); Quality Dairy Co. v. Openlander, Mo. App., 456 S.W.2d 608, 610; Coplin v. Hall, Mo.App., 449 S.W.2d 8, 10(1); Moore v. Huff, Mo.App., 429 S.W.2d 1, 6(3); and Koehler v. Schott, Mo.App., 426 S.W.2d 677, 680(1) concerning exercises over misspelling and the omission of words and phrases from prescribed MAI forms. The absence of key words and commas, or the inclusion of commas and certain words improperly, can certainly prejudicially change the meaning of an instruction, but we venture no opinion as to whether the instruction errors detailed in this footnote are prejudicial.

3. For other cases upholding the rigid rule requiring strict adherence to the pattern

forms in MAI see: Cash v. Bolle, Mo. (banc), 423 S.W.2d 743; Gormly v. Johnson, Mo., 451 S.W.2d 45; Higgins v. Gosney, Mo., 435 S.W.2d 653; Brannaker v. Transamerican Freight Lines, Inc., Mo., 428 S.W.2d 524; Gousetis v. Bange, Mo., 425 S.W.2d 91; Murphy v. Land, Mo., 420 S.W.2d 505; Hunter v. Norton, Mo., 412 S.W.2d 163; Motsinger v. Queen City Casket Company, Mo., 408 S.W.2d 857.

4. Emphasis is ours to illustrate that in attempting to quote from Instruction No. 2, defendant Clark made five errors: namely, she (1) omitted her given name, (2) substituted the word "neither" for the word "either," (3) added the word "or," (4) capitalized the word "intersection," and (5) left out the word "Highway" before the figure "72."

**156**

\* \* \* It *would have been simpler for* [plaintiff] *merely to have recited the mandatory instruction in* [MAI] *17.01 that defendant* [Clark] *failed to obey a traffic signal"* [5] *without describing its location.* To the contrary, plaintiff argues that MAI 17.01, as it relates to Instruction No. 2, had to be modified because there is a difference between a traffic signal and a stop sign. Plaintiff asseverates the modification was accomplished in the manner required by Rule 70.01(e), but alternately contends that if we do not agree, the deviation "is so trivial and inconsequential as not to prejudice any defendant" for the reason that defendant Clark admitted running the stop sign and the additional words complained of were simply descriptive of the location of the stop sign.

There is a real, generally understood and accepted distinction between a "stop sign" and a "traffic signal." Webster's Third New International Dictionary of the English Language Unabridged (*and most any other dictionary, for that matter*) defines "stop sign" (p. 2251) as an "octagonal sign requiring vehicles to stop before entering or crossing a thoroughfare;" a "traffic signal" (p. 2423) is said to be an "electrically operated signal (as a system of colored lights) for warning and controlling traffic." Employment of the term "traffic controls" in Notes on Use under MAI 14.02 and 14.03 (both editions), indicates the composers and adopters of MAI were aware that motorists are supposedly controlled by and observant of devices other than traffic signals, and there are numerous statutory provisions to illustrate that a stop sign and a traffic signal are not considered to be one and the same thing.[6] Although the courts, abetted by MAI and its associated rules, moil toward the unlikely accomplishment of reducing the instruction

loquacity of judges and lawyers, we presently know of no tribunal intent upon penalizing a party with sapience sufficient to emend a MAI form in order to endow an object with its correct and proper appellation. Cf. Jurgeson v. Romine, Mo. App., 442 S.W.2d 176, 178(5).

■ The existence of the stop sign was not disputed; neither was it questioned that the stop sign was located "on Highway 51 at the intersection of Highway 51 and Highway 72." Consequently, there was no call to hypothesize such facts in Instruction No. 2. Gottlieb v. Hyken, Mo., 448 S.W. 2d 617, 620(2). Moreover, there was the circumstance that the stop sign was positioned 130 feet south of the crossing of the normally traveled portion of the two highways. Defendant Bonds complicated the situation by testifying he was familiar with the accident scene and that northbound motorists on Highway 51 ordinarily did not stop where the sign was situate "but they all roll up there to the cross road" because it wouldn't do "any good to stop back there." These factors illustrate how erroneously complicated an instruction could become in a try at fully reciting all of the elements attending this particular stop sign, and how it may be logically argued that an instruction omitting some of this maze of facts, *while recasting only a part thereof, would be unfair and argumentative. The entire problem points to the soundness of the theory underlying the MAI method of instructions, i. e., only ultimate facts completely shorn of evidentiary details should be submitted to the jury.* Albeit that we cannot bring ourselves to say it is error to call a stop sign a stop sign, an unnecessary undertaking to describe the location of the stop sign when that was not a determinative issue, exceeded the bounds of Rule 70.01(e) by submitting detailed evi-

---

5. MAI 17.01 uses the term "violated the traffic signal," rather than "failed to obey a traffic signal," as stated by defendant Clark.

6. Sections 300.010(17); 300.130; 300.-135; 300.155; 300.165; 300.175; 300.-

260; 300.270; 304.015; 304.022–5(2); 304.281; 304.321; 304.331; 304.351. Also see "Traffic Signs" and "Traffic Signals" in the Missouri Driver's Guide, Revised December 1967, pp. 10–12; 60A C.J.S. Motor Vehicles §§ 360(4) and (5), pp. 552–557.

dentiary facts. Furthermore, it could be said that reference to the sign's position may have unduly emphasized one element of defendant Clark's duties. Cf. Silvey v. Missouri Pacific Railroad Company, Mo., 445 S.W.2d 354, 362. We are indubitably tied to the aphoristic principle that an appellate court will be more liberal in upholding the action of a trial court in sustaining a motion for a new trial then in denying it. This is for the reason that a reversal of a court denying a new trial would necessitate reversal of a judgment, and also because the right of a trial court to grant a new trial involves judicial discretion, which many times is founded upon matters known to the court nisi but unknown to us. See cases in West's Missouri Digest, Appeal and Error, ☜No. 977(3). This precept has been afforded complete accommodations in appeal cases involving jury instructions. Johnson v. West, supra, 416 S.W.2d at 166; Pollard v. General Elevator Engineering Company, Mo., 416 S.W.2d 90, 95–96(6); Stewart v. City of Marshfield, Mo.App., 431 S.W.2d 819, 825(5, 6).

### Re: Instruction No. 3

Hopefully, plaintiff's instructions will not be in their present form on retrial, and for that reason it is not necessary to discuss in detail all of defendant Bonds' complaints anent Instruction No. 3.[7] However, as to his assertion that the word "would," rather than the word "could," should have been used in paragraph First of Instruction No. 3 to conform with illustrative instruction No. 4 in MAI 31.04, we are aware of the ado made over these particular words in

Burrell v. Mayfair-Lennox Hotels, Inc., Mo., 442 S.W.2d 47, 53–54(6), as applied to paragraph Third of MAI 22.03. Defendant Bonds, it appears, was misled into this contention by human error that even occasionally creeps into the efforts of good committees and courts. By following the Committee's Comments and referrals under MAI 17.02 and MAI 19.01 ("Where suit is against one of two or more joint tortfeasors"), we are directed to "illustration at 31.03" (in MAI–1969 this is "illustration at 35.03"), which concerns a "Three Car Chain Collision" sans any instruction comparable to MAI 17.04. Further search discloses that illustration at 31.04 (35.04 in the 1969 edition), "Right Angle Collision" with MAI 17.04, more nearly meets the purposes of this case. Unfortunately, this is where MAI and defendant Bonds fall into error. Paragraph First in illustrative instruction No. 3 of MAI 31.04, dealing with the defendant servant, correctly follows MAI 17.04 by using the word "could," but paragraph Second in illustrative instruction No. 4 of MAI 31.04, concerned with the defendant master, unaccountably deviates from MAI 17.04 by using the word "would." Nevertheless, and opposed to defendant Bonds' urging, the second disjunctive submission in paragraph First of plaintiff's Instruction No. 3 (following the Committee's Comment under MAI 17.02) is taken directly from MAI 17.04 which uses the word "could" and not the word "should." In giving this part of the instruction, the trial court and the plaintiff were in strict compliance with Rule 70.01 (b). Sheets v. Dakota Iron Store, Mo.App., 442 S.W.2d 953, 955.

---

7. Sweatman v. McClure, Mo.App., 416 S.W.2d 665, cited by defendant Bonds, is not authority for his assertion that plaintiff should have offered two verdict directing instructions against him. MAI 17.02 is the one form to follow when "submitting multiple negligent acts." Rooney v. Lloyd Metal Products Company, Mo., 458 S.W.2d 561, 571(11). Concerning defendant Bonds' complaint that Instruction No. 3 repeatedly referred to him by name, it suffices for us

to cite the parties to Newsom v. Crockett, Mo.App., 453 S.W.2d 674, 677(3). The propriety of using MAI 19.01 in paragraph Third of Instruction No. 3 may be ascertained by reading the directions to comments under that MAI, observing the illustration at MAI 31.03 (35.03 in MAI–1969), and referring to Cash v. Bolle, supra, 423 S.W.2d at 744–745(1) and Joly v. Wippler, Mo., 449 S.W.2d 565, 569(4).

Of more serious concern is the addition of the words "and thereby have avoided the accident" (which do not appear in MAI 17.04) to the second disjunctive submission in paragraph First of Instruction No. 3. Plaintiff argues that the instruction was correctly given in this fashion because "there is no exact [MAI] to cover the plaintiff's instant case," or if the added words were a deviation from an applicable MAI, it was not prejudicial and simply added a burden on plaintiff greater than that imposed by MAI 17.04. To answer plaintiff's first argument is rather simple: MAI 17.04 is the applicable MAI formulated and adopted for submission of the particular issue posed by plaintiff in this cause (Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., Mo.App., 407 S.W.2d 622, 627; Sweatman v. McClure, supra, 416 S.W.2d at 667 (2)], and is the instruction to be given if the mandate of Rule 70.01(b) is to be followed. Most recently in Houston v. Northup, Mo. (banc), 460 S.W.2d 572 (decided November 9, 1970), it was reiterated that "Implicit in a scheme of approved pattern instructions such as MAI is the central idea that such instructions do not require further clarification or amplification. * * Consequently, we have held * * * that change in the prescribed language other than the authorized modifications is not permissible and constitutes error." Therefore, adding the words "and thereby have avoided the accident" to MAI 17.04 constituted error.

Whether submission of a particular instruction is authorized takes on considerations differing from the elements to be included in the charge. An instruction on lookout may be in the exact form authorized by MAI, yet if the facts show that defendant could not have seen the plaintiff in time thereafter to take effective precautionary action to avoid the collision, the case is not submissible on that claim of primary negligence. Shelton v. Bruner, Mo.App., 449 S.W.2d 673, 679–681 (3–6). Likewise, even though a motorist has the duty to stop, swerve or slacken speed when he knows, or by the use of the highest degree of care, could have known that there was a reasonable likelihood of collision in time thereafter to take such preventive measures [Jefferies v. Saalberg, Mo.App., 448 S.W.2d 288, 291(2)], this would not warrant the giving of an instruction on those elements of primary negligence unless there is, in addition, substantial evidence that he had time and space enough to thereby have avoided the accident (cf. Zalle v. Underwood, Mo., 372 S.W.2d 98, 102 (1, 2); Thompson v. Gray, Mo.App., 415 S.W.2d 299, 306), or to put it another way, unless there is substantial evidence from which the jury could reasonably infer that the use of such measures could have resulted in the accident being avoided. Martin v. St. Louis Public Service Company, Mo. App., 368 S.W.2d 498, 500(1). Nonetheless, just as it is held unnecessary to instruct on the further hypothesis that the accident could have been avoided in a charge on failure to keep a careful lookout coupled with a finding of causation [MAI 17.02 and 17.05; Lincoln v. Railway Express Agency, Inc., Mo., 359 S.W.2d 759, 768(13)] so, too, the Committee on Jury Instructions and the Supreme Court obviously felt such a hypothesis was not required under MAI 17.04.[8] We consider Emery Bird Thayer Dry Goods Co. v. J. C. Nichols Co., Mo. (banc), 427 S.W.2d 492, 498, Silvey v. Missouri Pacific Railroad Company, supra, 445 S.W.2d at 362(9), and Strickland v. Barker, Mo., 436 S.W.2d 37, 40(1), support for the trial court's apparent view that the addition of the unauthorized words to MAI 17.04 amounted to prejudicial error. In the Emery Bird Thayer case, plaintiff was directed upon retrial to omit alluding to "plaintiff's property sustained damage" and confine itself to the exact wording of paragraph Third in MAI 17.01, and the defendant in Silvey was

---

8. The difference between an instruction submitting primary negligence and causal connection, and one involving a humanitarian situation, is explained in Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 15.

told it had no leave to add the phrase "for an approaching train" to the charge that plaintiff "failed to keep a careful lookout," as specified in MAI 28.01. Modification of MAI 17.03 [and 17.02] in Strickland by augmenting the charge that defendant "drove at an excessive speed" with the words "under the circumstances," was said by plaintiff to be justified "to fairly submit the issues." Rejecting this argument, the Supreme Court held that "MAI 17.03 did not need modification * * *. It was error to deviate from MAI 17.03 by the addition of the words 'under the circumstances.'"

### Re: New Trial On All Issues

■ Plaintiff lastly contends the order for a new trial should have been limited to the issue of liability only.

In their motions for a new trial, both defendants asserted that the trial court had erred in permitting plaintiff to testify and argue regarding loss of wages and "various elements of plaintiff's alleged damages," when such testimony and argument (for stated reasons) was improper. The failure of the trial court to include these matters as reasons for its order granting a new trial, did not eliminate them as a partial basis for its ruling [Artstein v. Pallo, Mo. (banc), 388 S.W.2d 877, 881–882(4)], and the fact the new trial was granted "on all issues" is some evidence that the trial judge considered plaintiff's damages to be so interrelated with the question of liability that the issues could not be properly tried separately. Trial courts, as repeatedly said, are possessed of broad discretion in passing upon motions for a new trial. Union Electric Company v. Turner, Mo.App., 446 S.W. 2d 430, 433(5). "A new trial may be granted * * * on all or part of the issues after trial" (Rule 78.01), "but there is no set rule which governs this question in every case" [Bischoff v. Dodson, Mo.App., 405 S.W.2d 514, 520], and once the trial court has exercised its discretion in awarding a new trial on all of the issues we are not inclined to interfere with that action, save for the showing of a clear abuse of that power which does not appear here. Coonis v. City of Springfield, Mo., 319 S.W.2d 523, 528(10, 11).

The judgment of the trial court granting a new trial on all issues is affirmed and the cause is remanded for that purpose.

STONE and HOGAN, JJ., concur.