**BRESHEARS et al. v. MYERS.**

No. 43532.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

George H. Miller, Royal M. Miller, Sedalia, F. M. Brady, Warsaw, for appellants.

John T. Martin, Sedalia, Martin & Gibson, Sedalia, of counsel, for respondent.

HYDE, Presiding Judge.

Plaintiff, Ada Breshears, sued for $25,000 for personal injuries, and plaintiff, Larry Breshears (her husband), sued for $5,000 medical and hospital bills, loss of services, etc. Verdict and judgment was for defendant and plaintiffs have appealed.

Mrs. Breshears, hereinafter referred to as plaintiff, was injured when the Ford she was driving was struck by defendant's Packard. The case was submitted on primary negligence and the defense was contributory negligence. Plaintiff alleges as error the refusal of instruction P1, submitting the case on humanitarian negligence, based on defendant's ability to stop his car after plaintiff's peril arose; and in admitting in evidence a statement from a book as to the distance required to stop a car going 60 miles per hour. The decisive question is whether or not plaintiff made a submissible humanitarian negligence case.

The collision took place in front of the Dell Service Station on U. S. Highway 65 about six miles south of Warsaw. The highway runs in a general north and south direction and the station is on the east side near the top of a hill with a 5% grade. The

pavement was 20 feet wide and, in the center of the west half of the slab, there was a yellow line going up the hill that ended seven feet north of the center line of the main station building. The actual crest of the hill was 149 feet south of the center line of this building. The station pumps, in front of this building, were 41 feet from the east edge of the pavement; and the area, between the pumps and the pavement, was covered with gravel, which also extended to the north and south making a driveway and parking place.

Plaintiff lived near the station, was familiar with the place and had been there many times. Driving home from Warsaw, she decided to stop there to buy a loaf of bread. She slowed the Ford to about 10 miles per hour and made a left turn across the highway, starting her turn about 15 feet north of the south end of the yellow line (171 feet north of the crest of the hill). She said it was neither a long turn nor an abrupt one but somewhere in between. She said it was at an angle between 45 and 90 degrees. She also said that before turning she looked in front and in her rear view mirror and saw nothing on the highway. She looked only toward the station after making the turn. Plaintiff had no recollection of putting on the brakes and did not know whether her speed slowed in crossing the highway but when it left the highway it was "in very slow motion, ready to stop." Just after the Ford left the highway (rear wheels four to six feet off the pavement), and either stopped or in slow motion, it was struck by defendant's car. Plaintiff at no time saw defendant's car and was not aware of its approach. The front of the Packard struck the Ford at about the right front tire and knocked it back to the west side of the pavement. The Packard went sideways to the north of the station, stopping with its rear wheels 10 to 14 feet east of the pavement. The Packard left tire marks on the pavement for 145 feet. These tire marks took a gradual course to the right. The marks of the right wheels left the pavement 74 feet south of the center line of the station building and the marks of the left wheels left it 25 feet to the south. The collision

was in front of the station building. Plaintiff estimated the Ford went about 35 feet from the place where she started making the turn to the point where it was struck.

Defendant said he was driving between 65 and 70 miles per hour and that when he first saw the Ford it was several hundred feet away, on the west side of the road, moving normally south and giving no indication of making a turn, but that when it was about 175 to 200 feet from him he saw the front wheels start turning across the highway. He said he immediately applied his brakes and pulled "slightly to the right and away from this car", hoping the occupants of the car would see him "and pull back to their side of the highway"; but that the Ford continued across the highway in front of him without changing course or slackening speed. Plaintiff had the evidence of a surveyor that from the point where she started the turn it was possible to see (with her eyes 4'3" above the pavement) only the top of a Packard (5'6" above the pavement) when it was 450 feet south. Beyond that point the dip in the road, south of the crest of the hill, prevented it from being seen at all. At 400 feet, the top foot and a half of the Packard would be showing. At 300 feet it could be seen "from the bumper on up" and at 250 feet there was "full vision of the car." Plaintiff also had evidence of tests in stopping a Packard of the same model as defendant's, at 60 miles per hour, showing that it was stopped in 115 feet from the time the brakes were applied, reaction time not included.

Plaintiff's theory of humanitarian negligence is as follows: "The average speed of plaintiff's automobile was about five miles per hour (from ten miles per hour to a stop or near stop), while traveling the 35 feet from where she started to turn to the point of impact. It would have taken her 4.79 seconds to travel the 35 feet at an average speed of five miles per hour. Defendant testified that he was driving 65 or 70 miles per hour as he approached the scene of the accident. At this rate of speed, defendant's automobile would have traveled 94.9 feet to 102.2 feet per second. This would have placed defendant's automobile back down

the road some 454 to 489 feet when Mrs. Breshears started to make her turn. Thus, by simple mathematical calculations the jury could have found that when the front wheels of plaintiff's automobile were over the center line of the pavement, defendant was over 400 feet south." However, defendant says: "At a speed of 10 miles per hour her automobile was moving 14.67 feet per second, and at such speed it would have travelled 35 feet in about 2⅓ seconds. Assuming defendant's automobile approached the point of collision at a speed of 70 miles per hour or 102.69 feet per second, such automobile would have been 239.61 feet distant from plaintiff's automobile at the time her turn was commenced. In the ¾ of a second to be allowed for reaction time (Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785), defendant's automobile would have closed the distance by 77 feet, leaving an intervening distance of 162 feet."

Perhaps defendant's estimate is too long and the true time was somewhere between these two estimates. There are two weaknesses in plaintiff's contention. In the first place, plaintiff's estimate of time is speculative. See East v. McMenamy, Mo.Sup., 266 S.W.2d 728. Likewise the estimated distance of 35 feet (in a position of imminent peril) is very uncertain. But the really fatal weakness in plaintiff's case is that there was no evidence of stopping distance at the speed defendant was actually going. Plaintiff's evidence only showed stopping distance at 60 miles per hour. All the evidence showed that defendant was going faster than that. Plaintiff's own evidence showed tire marks beginning 145 feet from the place of the impact (when plaintiff's evidence was that application of the brakes for 115 feet would bring about a complete stop at 60 miles per hour) with enough momentum remaining to knock the Ford all the way across the highway. (The patrolman's testimony, defendant's witness, is consistent with this because he said he measured marks of 120 feet and it was shown the longest marks went off the pavement 25 feet from the station.) Thus plaintiff's own evidence showed a greater speed than 60 miles per hour. It is well known

and must be recognized that increased speed greatly extends possible stopping distance. In Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626, 628, we held no humanitarian negligence case was made where there was no evidence to show stopping distance at the speed the defendant's truck was actually going. There the plaintiff had no evidence as to the speed of the truck. (Also in the Branscum case there was no evidence as to the relative position of the vehicles.) Here there was evidence of the speed of defendant's car (defendant's testimony) but no evidence of stopping distance at that speed or at any speed indicated by the physical facts. Therefore, we cannot hold that the Court erred in refusing to submit the case on humanitarian negligence.

It is true that plaintiff's refused humanitarian instruction hypothesized in the conjunctive defendant's ability "to have stopped his car and to slacken the speed thereof and stay on the pavement." Of course, defendant did slacken speed (the instruction so stated) and also changed the course of his car to the right. As the situation developed it probably would have been better if he had changed its course to the left. However, as we said in Vietmeier v. Voss, Mo.Sup., 246 S.W.2d, loc. cit. 789, where it was contended that the defendant therein who attempted to avoid the plaintiff by swerving, should have sounded his horn: "Inasmuch as in the available time it was possible to do only one of the two things, and defendant did do one of those two things, it was not negligence for defendant not to have done the other thing." What defendant was trying to do was to stop and ability to stop was the real issue submitted by the instruction. The evidence was insufficient on that issue. We hold there was no error in refusing to give this instruction.

The admission in evidence of a statement from a chart in a book prepared by the State Highway Department as to stopping distance at 60 miles per hour (read by the patrolman) was improper as hearsay and defendant concedes this. However, under the circumstances of this case, we agree with defendant that this was not re-

versible error, requiring remand for a new trial, especially in view of our ruling that plaintiff did not make a jury case on humanitarian negligence. The stopping distance at 60 miles per hour as shown by the chart was greater than that shown by plaintiff's tests. The patrolman (defendant's witness) who read this from the chart also said his experience showed that actual stopping distances were less than shown on the chart; and that "this chart is prepared as a minimum for safe driving." This evidence was material only on the issue of defendant's negligence and the jury found that defendant was negligent, specifically so stating in their verdict which was as follows: "We 10 members of the jury find in favor of the Defendant. Both were negligent." Furthermore, all the evidence indicates that defendant's car must have been in plain view when plaintiff made the left turn and this is conclusive evidence that plaintiff looked ahead negligently. Branscum v. Glaser, supra. We hold the admission of this evidence was not prejudicial error.

The judgment is affirmed.

All concur.