Darlene APPELHANS, Respondent,

v.

Bart E. GOLDMAN, Appellant.

No. 48492.

Supreme Court of Missouri,

Division No. 2.

Sept. 11, 1961.

A. L. Shortridge, Joplin, Emerson Foulke, Joplin, for appellant.

Edward V. Sweeney, Monett, Esterly & Casteel, Carthage, for respondent.

BOHLING, Commissioner.

Mrs. Darlene Appelhans recovered a judgment of $20,000 against Bart E. Goldman for personal injuries arising out of an automobile collision. Plaintiff's case was submitted only on defendant's ability to stop and avoid the collision under the humanitarian doctrine. On this appeal, defendant contends the court erred in admitting certain evidence; that plaintiff failed to make a case under the submitted negligence, and that the damages awarded are excessive.

The collision occurred at the intersection of Center (north-south) and Olive (east-west) Streets in Carthage, Missouri, on the morning of November 20, 1958, a fair, dry day. Olive Street is 39 feet 7 inches wide, has a rough-type blacktop surface, and is slightly upgrade for eastbound traffic approaching Center Street. Center Street is 43 feet 7 inches wide, has a gravel surface, and a heavier upgrade for northbound traffic approaching Olive Street. A house is located at the southwest corner of the intersection, and the sidewalk from the house to the south curb of Olive is 30 feet 6 inches west of the west curb of Center Street.

Plaintiff worked as a practical nurse on the night shift at the Jane Chinn Hospital in Webb City. She lived about 6 miles from Carthage. Her son Richard Appelhans, Jr., attended the Carthage High School. After she finished work it was her custom to meet Richard at the road to their home, drive with him to his school in Carthage, and return home with their 1950 two-door Ford automobile, which had a standard gear shift and was in good condition. Richard was 16 years old and was licensed to drive automobiles. When plaintiff met Richard on the morning of November 20, 1958, he took the driver's seat and

plaintiff moved over on the front seat. Richard drove to Carthage and, after stopping for traffic, made a left turn off Oak Street to proceed northwardly on Center Street. Olive is the first street north of Oak. Richard, northbound on the east half of Center Street, shifted from low to second gear, and reached a speed of about 20 miles per hour, but slowed to 10, not over 12, m. p. h. for the intersection of Center and Olive. He looked in both directions after he passed the house on the southwest corner of the intersection but did not see any car on Olive. Plaintiff also looked to the west but her son, who was the taller (5 feet 9 inches against plaintiff's 5 feet 1½ inches) blocked her view to some extent. She too saw no approaching eastbound car.

Defendant testified he was going deer hunting, and was eastbound, right at the center line, on the south half of Olive Street in his 1952 Ford automobile.

The length of each automobile was 16 or 17 feet.

The house at the southwest corner of the intersection was the only obstruction to the vision as the operators of the cars neared the intersection. Plaintiff adduced testimony to the effect that the whole of an automobile 80 feet south of the south curb of Olive Street could have been seen by defendant, an eastbound motorist on Olive Street, when 50 feet west of the west curb of Center Street; that both front headlights of said automobile could have been seen by defendant when 68 feet west of the west curb of Center Street. There was testimony from which the jury could find that after plaintiff's car cleared the house at the southwest corner of the intersection it could have been seen by an eastbound motorist on Olive Street 300 feet west of Center Street. Defendant testified his automobile was about north of the sidewalk of the house on the southwest corner of the intersection (that is, 30½ feet west of the west curb of Center Street) when he first saw plaintiff's automobile, which he placed 80 feet south of Olive Street.

Plaintiff first saw defendant's car when the front of her car was approximately 8 or 9 feet south of the center of Olive Street, and defendant's car was then a little better than 50 feet west of the west curb of Center Street. About 12 feet of plaintiff's car was then in the intersection. Plaintiff testified that at that time she had no idea a collision would occur. Plaintiff next heard the noise from defendant's application of his brakes, and said noise caused Richard to look and first see defendant's car. The left front end of defendant's car struck the rear bumper and left rear fender of plaintiff's car after plaintiff's car had cleared the south half of Olive Street and was in the northeast quadrant of the intersection with its rear end a foot north of the center of Olive Street. Plaintiff's car was traveling a foot or more east of the center line of Center Street.

Plaintiff offered in evidence certain admissions against interest by defendant. Defendant was driving at a speed of 25 m. p. h.; his skid marks started 2 or 3 feet west of the west curb line of Center Street and his left skid mark was right at the center of Olive Street; his brakes were good on all four wheels, and his reaction time "was above average," "was excellent."

The officer who investigated the collision at the scene testified defendant told him "he just didn't see the car in time to stop."

■ Defendant makes the point that plaintiff's Exhibit 4 and testimony based thereon by plaintiff's witness Jerry Anderson as to stopping distance were hearsay and their admission was prejudicial error. Plaintiff says, among other contentions, that defendant interposed no timely and proper objection to or motion to strike said evidence on the ground of its being hearsay and may not now convict the court of error in its admission.

Witness Anderson had taught "drivers education" in the Carthage Senior High

School for three years. He identified plaintiff's Exhibit 4 as a chart prepared by the Traffic Engineering and Safety Department of the American Automobile Association showing the distance in feet for "Reaction Time" (¾ of a second being used), "Breaking," and "Total Stopping Distance" (minimum) for automobiles traveling at various speeds; and testified, without detailing it, that the distances shown on Exhibit 4 were generally accepted and used in traffic work and in teaching "drivers education," and were approximately the same as the distances shown on other like charts.

Defendant, after preliminary questions, objected to Exhibit 4 on grounds that were general in nature (Bowman v. Ryan, Mo. App., 343 S.W.2d 613, 620 [14]) and not on the ground said exhibit was objectionable as hearsay. The objection was overruled and Exhibit 4 was admitted in evidence. After a number of questions and at defendant's request, the court agreed that the record show "a continuing objection to any testimony with regard to this chart as not being properly identified and not having any bearing on this case." Following several questions and answers explanatory of the chart and the witness's answer that he was stating what the chart presented and not his personal knowledge, defendant interposed the objection: "Object to further testimony as hearsay, your Honor. The Court: Overruled." Throughout the rest of the direct examination of this witness no further objection was made to Exhibit 4 or to the witness's testimony which included facts within his personal knowledge. There was no objection to his testimony that the total stopping distance for a car traveling 30 m. p. h. was 78.4 feet and for a car traveling 25 m. p. h. was 60.2 feet. We find no motion by defendant to strike said exhibit or any of the witness's testimony.

Breshears v. Myers, Mo., 266 S. W.2d 638, 640[3], although holding the admission of the evidence not reversible error, states: "The admission in evidence of a statement from a chart in a book prepared by the State Highway Department as to stopping distance at 60 miles per hour (read by the patrolman) was improper as hearsay and defendant concedes this." See Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 84 [14–16]; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481, 489 [12, 13]; Superior Ice & Coal Co. v. Belger Cartage Service, Inc., Mo., 337 S.W.2d 897, 905 [6,7]; Meriwether v. Quincy, O. & K. C. R. Co., 128 Mo.App. 647, 107 S.W. 434, 439 [7]; 32 C.J.S. Evidence § 718, p. 627; 20 Am.Jur. § 964, p. 812. Practical experience has been considered to prima facie qualify a witness as to the distance within which an automobile may be stopped. Young v. Bacon, Mo.App., 183 S.W. 1079, 1082 [7]; Brockman v. Robinson, Mo.App., 48 S.W.2d 128 [3]; Annotation, 135 A.L.R. loc. cit. 1413; 9C Blashfield, Automobile Law, Perm.Ed., § 6237, p. 414. That courts in the discussion of issues refer to texts and prior decisions bearing on the issue does not make such references independent evidence for consideration by a jury.

Objections to the admission of evidence should be timely. Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842 [7]; State ex rel. State Highway Comm. v. Cone, Mo., 338 S.W.2d 22 [4]. And:

"It is well settled that an objection to the admissibility of evidence must be specific and contain the proper ground of its exclusion, else the trial court will not be convicted of error for overruling it. * * * Relevant evidence received without objection may properly be considered, although it would have been excluded on proper objection. * * * Even hearsay evidence admitted without objection has been considered. * * * A rule of evidence not invoked is waived." Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539 [3–5], citing cases.

With respect to testimony based on the National Automobile Dealers Association book showing the average retail price of used automobiles, it was said: "Defendant

now contends that this was based upon hearsay and constituted no legal evidence of value. It appears from an examination of the transcript that this ground was not assigned in the objection to this testimony and defendant did not move to strike the answer when it appeared that the witness was basing his opinion of value upon the N.A.D.A book. The point is therefore not before us for review." Fitzgibbon Discount Corp. v. Windisch, Mo.App., 271 S.W.2d 226, 229 [11].

Defendant has filed no reply brief, and has not indicated why plaintiff's authorities do not rule our consideration of the issue. We conclude defendant did not invoke the hearsay rule against the evidence complained of.

■■ Defendant waived his motion for a directed verdict at the close of plaintiff's evidence by proceeding with his evidence and our review is based upon his motion at the close of all the evidence. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607 [12]. In determining whether plaintiff made a submissible case on defendant's duty to stop under the humanitarian doctrine, plaintiff is entitled to the benefit of all the favorable probative evidence in the case and all of the favorable inferences to be drawn therefrom, and defendant's evidence is to be disregarded unless it aids plaintiff's case; but plaintiff may not have the benefit of defendant's evidence which is contrary to her own and at war with her fundamental theory of the case. Price v. Nicholson, Mo., 340 S.W.2d 1 [1]; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 [3].

■ In this connection " 'the jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case.' " Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280 [4, 5].

■ A motorist is under a duty to exercise the highest degree of care to keep a lookout ahead and to discover a person in a position of imminent peril and moving toward the path of his automobile apparently oblivious to its approach and intending to continue into its path. Williams v. Ricklemann, supra, 292 S.W.2d 281 [6, 7]; Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 362 [5].

■ " 'A failure to keep a lookout, at a place where there is a duty to do so, is not, under our Missouri humanitarian rule, any excuse for failing to prevent injury to one whose peril could have been discovered in time to prevent his injury if such a lookout had been kept.' " Frandeka v. St. Louis Pub. Serv. Co., 361 Mo. 245, 23 S.W.2d 540, 548 [16]. See Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 937 [5]; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463, 467 [9].

■ A party is not conclusively bound by his estimates of speed, distance, or time. Fenneren v. Smith, Mo., 316 S.W.2d 602, 608; Klee v. Bryan, Mo.App., 346 S.W.2d 695 [2].

■ Defendant's presentation that plaintiff failed to make a submissible case stresses portions of defendant's testimony favorable to his defense which was not binding on plaintiff. He also argues, since plaintiff testified she had no idea there would be a collision when she first saw defendant's car a little better than 50 feet west of the west curb of Center Street and her car was 8 or 9 feet south of the center of Olive Street, that plaintiff was not at that time in the imminent peril zone. We do not agree, as defendant's car did strike plaintiff's car and any contributory negligence of plaintiff would not bar her recovery under the humanitarian doctrine. We are in full accord with defendant's cited cases (Branscum v. Glaser, Mo., 234 S.W.2d 626, 628, and Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 359), but the facts and in-

ferences available to plaintiff under the instant record distinguish it from said cases.

The jury could find from defendant's testimony at the trial that he had "good" hydraulic brakes on all four wheels; that his speed was "about 25 to 30, 25, 27" m. p. h. as he proceeded east; that he had a clear view of the intersection; that he first saw plaintiff's Ford when he was 50 feet west of its path and it was south of the intersection and it looked to him like it was not going to stop; that he continued to observe plaintiff's car and saw it when it entered the intersection, and that, if the collision had not occurred, he could have stopped his car in an additional 20 feet; that is, a total stopping distance of 70 feet. But, the jury could have found defendant could have stopped his car in a shorter distance because defendant also testified that "from the time that they [his brakes] took hold and started skidding, you slowed down from twenty-five to five, right? A. Yes." He testified his skid marks started 2 feet west of the west curb line of Center Street. So, if we consider the collision occurred 1 foot east of the center line of Center Street, as testified to by defendant, he reduced his speed from 25 to 5 m. p. h. in 24 feet 9½ inches (say, for convenience, 25 feet), and at the same ratio, without giving consideration to any law of physics that might be involved, a jury by a simple mathematical computation could find that defendant could have stopped in 6 feet 3 inches more distance, or a total stopping distance of 56 feet 3 inches.

■ Considering evidence adduced by plaintiff, defendant admitted that his reaction time "was above average"; "it was excellent"; and plaintiff had evidence that Olive Street, with a rough-type blacktop pavement, was slightly upgrade as defendant approached Center Street. A jury could reasonably find that plaintiff's car, traveling 10 m. p. h., was in a position of imminent peril of being struck at least when its front reached the south curb line of Olive Street. (Defendant's testimony was sufficient for a finding that the occupants of plaintiff's car were oblivious of their danger and that defendant was aware of that fact, which would extend the imminent peril zone.) Plaintiff placed defendant's car a little better than 50 feet west of the west curb of Center Street when her car was 8 or 9 feet south of the center line of Olive Street. About 12 feet of her car was then in the intersection. If defendant was traveling 2½ times as fast as plaintiff (25 m. p. h.), he was slightly more than 22 feet (1 foot plus ½ the width—43 feet 7 inches —of Center Street), plus a little better than 50 feet, plus 30 feet (2½ times the 12 feet plaintiff's car had traveled into the intersection) or a total of slightly more than 102 feet west of the path of plaintiff's car when it entered the intersection; or if defendant was traveling 3 times as fast as plaintiff (30 m. p. h.) he was slightly more than 108 feet west of the path of plaintiff's car when it entered the intersection. Defendant admitted he could stop at the speed he was going in 70 feet. Plaintiff made a case on the submitted negligence.

Defendant contends the verdict of the jury was excessive. Donahoo v. Illinois Terminal R. Co., Mo., 300 S.W.2d 461 [8–10], is defendant's only cited authority. Counsel might consider Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304, 309.

■ Our review of the evidence on this issue is in the light most favorable to the plaintiff. Riggs v. Metcalf, Mo., 315 S.W.2d 791 [6]; Woods v. St. Louis Pub. Serv. Co., Mo., 228 S.W.2d 665 [5]. Defendant's presentation is not in conformity with this rule.

Plaintiff was 38 years old and in fine health at the time of the collision. She had a life expectancy of 30.91 years. She was a licensed practical nurse, had worked at the Jane Chinn Hospital for about seven years, and was earning $160 a month. She was injured in November, 1958, and this— the second—trial was in June, 1960. The force of the collision caused her car to travel sideways and threw her to the right

and around. Plaintiff sustained a whiplash injury to her neck and trouble developed in her back and spine in the sacroiliac region and between her shoulders. She was hospitalized and put in traction. She remained in the hospital for ten days. She then received treatment at the doctor's office—traction, diathermy, and shots. She testified it was necessary for her to work. When she returned to work she walked in a twisted position and carried her head straight and stiff. She had difficulty with her work as a nurse and needed help in lifting and turning bed patients. Now more time is required and it is more difficult for plaintiff to perform her household duties than prior to the collision. Washing and ironing usually puts her in bed. She has severe headaches at times, sleeps on a bed board, and takes medication to dull the pain before she can go to sleep. She has muscle spasms in her neck and shoulder muscles, and in her low back. Some "fuzziness" has developed with her vision, and this still exists. She has limitation of movement of her neck and head, particularly to the right. She suffers pain in her right arm, which has become smaller than her left arm, and has lost 10% of her grip in her right hand. She was placed in a neck brace, a Thomas collar, in April, 1959, and in February, 1960, was placed in a steel, leather-covered back brace, which she wears all the time except when in bed. Plaintiff adduced expert testimony that all the mentioned conditions were the result of injuries sustained in the collision; that her neck condition is permanent and would not improve; that her low back condition is permanent; that she will be in and out of the steel back brace the rest of her life; that her headaches will continue; that her pains will worsen as she becomes older; that she is seriously and permanently disabled from performing some of the duties of a practical nurse—bending over beds, lifting and turning patients; and that she has sustained a 20 to 25% permanent disability to her body as a whole.

▮ Defendant's sole authority and presentation do not establish that this judg-

ment is excessive. On the other hand, consult, among others, Riggs v. Metcalf, Mo., 315 S.W.2d 791, 800 [8]; Agnew v. Cox, 8 Cir., 254 F.2d 263, 268 [5]; Hanson v. Tucker, Mo., 303 S.W.2d 126, 129 [5].

*The judgment is affirmed.*

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.