James S. ROONEY, Respondent,

v.

**LLOYD METAL PRODUCTS COMPANY,**
a Corporation, and Richard Chest-
nut, Appellants.

No. 54468.

Supreme Court of Missouri,
Division No. 1.

Oct. 21, 1970.

Lyman Field, Clay C. Rogers, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent.

Lowell L. Knipmeyer, John A. Borron Jr., and Knipmeyer, McCann & Millett, Kansas City, for appellants.

MICHAEL F. GODFREY, Special Judge.

Plaintiff in his personal injury and property damage action obtained verdict and judgment against defendants in the sum of $50,000 for personal injuries and $6,873.71, voluntarily remitted by plaintiff to $4,800, for property damage, totaling $54,800. After posttrial motions were denied defendants have appealed assigning as error certain specifications which hereinafter will be considered. The parties here will

be designated as they were in the trial court. Since defendants strenuously contend that plaintiff was guilty of contributory negligence as a matter of law this contention, in addition to the jury verdict, requires a detailed recital of the facts involved. We must consider the evidence in the light most favorable to plaintiff, giving him the benefit of all reasonable inferences. Herr v. Ruprecht, Mo., 331 S.W.2d 642, 645[1], 649[10]; Slaughter v. Myers, Mo., 335 S.W.2d 50, 51[1]; Brubaker v. Moore, Mo., 432 S.W.2d 216, 217[1]; Thompson v. Byers Transportation Company, 362 Mo. 42, 239 S.W.2d 498, 499–500[1–4], [5]. As thus considered, it appears that this automobile-truck collision occurred on interstate highway I–35 and I–29, a designated federal interstate highway system in Kansas City, Clay County, Missouri. This highway at point relevant here, runs in a northward-southward direction, is a three-lane highway going north and three-lane highway going south separated by a medial strip.

The northbound three lanes of this concrete highway measure 36 feet wide, and each lane is 12 feet wide and divided into clearly marked lanes for traffic. For practical purposes this highway going north is slightly upgrade and straight with the incline from bottom to crest of hill measuring about a mile and a half. Further north beyond the crest of this hill about two-tenths of a mile the highway divides, the east or outside lane turns right or northeast towards Liberty and Des Moines and the inside lane turns northwest towards St. Joseph and Maryville and a motorist traveling north may go either way from the center lane of traffic. The speed limit on this section of the highway is 70 miles an hour maximum and 40 miles an hour minimum for motor vehicles and 60 miles an hour maximum and 40 miles an hour minimum for trucks with posted speed limits being 70 miles per hour maximum and 40 miles per hour minimum.

The collision occurred on October 27, 1966, at about 9:00 p. m. on I–29 and I–35 in the center northbound lane between Armour Road and Russell Road about halfway up the hill. The night was dark, the weather clear and pavement dry.

Plaintiff drove his 1965 Chrysler Imperial north out of Kansas City on I–35. His automobile was in good condition, the headlights on low beam were working and illuminated 150 to 225 feet ahead of his car. As he started up the hill he was driving in the right-hand outside or slow-traffic lane at a speed of 50 to 55 miles per hour. There were some cars ahead of him in that lane and as he gained on them he could see the taillights on some of these cars and the rear lights of a car near Russell Road a quarter to a half mile away. He increased his speed to 55 to 60 miles per hour and pulled into the middle lane and passed one of the cars. As he was passing the second car he saw the headlights of the car he had passed in his rear-view mirror. He has just passed the second car and was not far ahead of it when for the first time he saw a "large dark object" in front of him in his lane about 200 feet away. Realizing he was gaining on it "and in just that fraction of a second (snapping fingers) I, of course, put on my brakes for all I was worth." He attempted to turn left, the right-hand lane being occupied by traffic, but slid sideways into the rear of the unlighted trailer at an angle. The trailer was moving much slower than he, estimated at 10–15 miles per hour with no lights burning that were visible from the rear. He was traveling between 35 to 40 miles per hour at impact. The impact was violent and both vehicles proceeded down the highway some distance, about 167 feet, before stopping. After the collision the truck driver, defendant Chestnut, said he was barely creeping trying to get up the hill as he had a 33,000 pound load. In response to a question as to what he was doing out there without lights, he stated he didn't know. Plaintiff sustained substantial injuries which hereinafter will be considered and his automobile was demolished and sold for salvage.

Defendant Chestnut, admitted agent and employee of defendant Lloyd Metal Products Company at the time and place involved, testified that he was driving a 1955 International tractor 190 attached to a bright red Lufkin flatbed trailer carrying a 28,000 pound load of coiled steel wire, with overall weight of load and vehicle of about 50,000 pounds. As he started up the hill he was in the middle lane and the accident occurred halfway up the hill. Cars were passing him on both his right and left and he was the slowest moving vehicle on the road going up the hill. Traffic was moderate and he intended to turn left at the bifurcation located two-tenths of a mile beyond the crest of the hill to go to Maryville. He could have changed lanes without creating a hazard. It was not necessary for him to be in the middle lane in order to turn. He was unaware that a car had struck his truck until he brought it to a stop. The impact felt like a "push" or a "surge of power" and he had no idea what caused it. The bar in the middle of the bumper of the trailer was knocked off by the impact.

Jeanne A. Sexton testified that she was a passenger in the front seat of a car, driven by her daughter Terry up the hill at 40 to 45 miles per hour in the outside lane. The plaintiff's automobile, with its headlights burning, passed them in the middle lane going about 50 to 55 miles per hour, slightly faster than they were traveling. After the plaintiff passed them, the driver of her car started to pull out into the middle lane to pass the car ahead of them and got about halfway into it when the collision occurred. They had started to pass a car ahead of them and pulled back before plaintiff passed them and the witness did not see lights on the rear of the trailer later struck by plaintiff's automobile. She didn't see a thing in the middle lane and after the collision she did not see any lights on the rear of the trailer. After the collision she asked the defendant truck driver why he was driving that truck up the middle lane with no lights and he responded that he didn't know he didn't have

lights. When asked by the witness as to why he was stopped he said he was not stopped but was moving around 5 miles per hour. There were small yellow lights on the side of the truck which were not visible from the rear of the truck. This witness thought that if plaintiff had not struck defendant's trailer the automobile in which she was riding would have collided with it. The automobile she was in stopped just a few feet from plaintiff's automobile. She never did see the truck-trailer prior to the collision.

Theresa Sexton, the driver of the automobile, testified that as she proceeded up the hill going about 45 miles per hour plaintiff passed her going about 50 to 55 miles per hour, and shortly thereafter she started to pass the automobile ahead of her and pulled into the center lane when she saw "sparks and everything" and she realized there was a collision ahead of her. This witness was intending to pass the automobile ahead of her when she saw plaintiff begin to pass her. Neither before plaintiff passed her, nor afterwards and prior to the collision did this witness see any taillights in the center lane ahead of plaintiff's automobile. Nor did she see any vehicles on the highway ahead of plaintiff's automobile. After the collision she testified there were no lights burning on the rear of the trailer. She was able to bring her automobile to a stop before striking rear of plaintiff's automobile. She also testified that in response to a question put by her mother Jeanne Sexton to the defendant Chestnut as to why he didn't have any lights on, the response was that the latter thought they were on. Asked why he was stopped the defendant replied that he was just barely creeping trying to get over that hill. She testified plaintiff's automobile had its front lights burning. This witness stated her car made skid marks in attempting to stop. She also testified that there were no other cars in either the middle or right lane between her automobile and plaintiff's automobile at the time of impact. She saw the brake lights on plaintiff's automobile come on and knew

something was wrong. There were at least two or three vehicles going up the hill in the right-hand lane at about this same time and place.

Police Officer Charles Keller arrived at the scene shortly after the collision and measured 89 feet of overall skid marks left by the plaintiff's automobile.

Police Sergeant Robert McKinney testified on behalf of defendants that the 89 feet of overall skid marks left by plaintiff's automobile would mean 79 feet of actual skid. This witness testified to road tests performed by him to determine the coefficient of friction, a factor needed to determine speed from skid marks. He stated that the overall stopping distance, including ¾ of a second reaction time and braking distance of a vehicle traveling at speed of 55, was approximately 195.5 feet, and at 60 miles per hour it approximated 226 feet. At the speed of 55 miles per hour, after the brakes were applied, it would take 3.3 seconds to stop a vehicle, and at 60 miles per hour it would take 3.7 seconds to stop such vehicle. He estimated that at 12½ miles per hour, the mean figure of defendants' estimated speed, that vehicle would travel 18.4 feet per second and in 3.3 seconds would travel 60.7 feet, and at 3.7 seconds would travel 68 feet. Thus he concluded that an overtaking vehicle traveling at 55 miles per hour and braking would have 256.2 feet in which it could be stopped while closing in on an overtaken vehicle traveling at 12½ miles per hour, and at 60 miles per hour it would have 294 feet in which it could be stopped. Under cross-examination this witness acknowledged that the official manual of the state (Missouri Driver's Guide) showed simple reaction time to range from ¾ of a second to as much as 1½ seconds and he stated that tests he had conducted on a group ranging in age from 20 years to 59 years varied from .4 to .9 of a second in reaction time. The officer acknowledged that these matters of calculations, as set forth in the official manual, were "within the range of the things posited by the State," and that

based on a reaction time of 1 second at a speed of 60 miles per hour the distance traveled during that time would be 88.2 feet, at speed of 55 miles per hour with 1½ seconds reaction time the distance traveled would be 121.2 feet, and at 60 miles per hour the distance traveled at 1½ seconds reaction time would approximate 132.3 feet, or exactly double the distance a vehicle would travel during such time as estimated by witness on direct examination. Such difference in figures, in addition to the fact that defendants' truck, as testified to by a witness, was only traveling 5 miles per hour, would be significant in this case in the opinion of the witness. This witness concluded that the impact was a terrific one.

◼  With the facts of the case being in this posture the defendants, though not seriously contending against submissibility of their negligence, urge that the plaintiff was guilty of contributory negligence as a matter of law in that he failed to keep a proper lookout, drove at an excessive speed, and did not have that control over his automobile as would enable him to stop in the length of his vision as projected by his headlights or within the "assured clear distance ahead" rule. A review of the facts in this case, and the authorities hereinafter cited, demonstrates that this contention cannot be sustained. While it is true that there was evidence of reaction time in this case, as testified to by Sergeant McKinney, the totality of variables mentioned in the testimony elicited warrants us in concluding that the reaction time of a person 64 years of age, in addition to the facts and circumstances existing on the highway at the time and place, i. e., darkness of night, approaching automobile lights, cars traveling in the outside or slow lane of the highway, unexpectancy of a slowly moving darkened vehicle in the middle lane (Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299, 304[9]; Beaver v. Wilhelm, Mo.App., 321 S.W.2d 1, 3[2]) was longer than the average ¾ of a second. Reed v. Burks, Mo.App., 393 S.

W.2d 377, 379–380[2]; Stimeling v. Goodman, 202 Va. 111, 115 S.E.2d 923, 926[2–4]. Further, although the official manual used in cross-examination of Officer McKinney was hearsay and improper (Breshears v. Myers, Mo., 266 S.W.2d 638, 640[3]; Appelhans v. Goldman, Mo. 349 S.W.2d 204, 206–208[1], [2,3], [4–6]), since no objection was raised to its use, its contents were before the court below and the jury to give to it whatever weight it was deemed entitled. State ex rel. State Highway Commission v. Williams, Mo., 289 S.W.2d 64, 66[5].

See also Wood v. Ezell, Mo.App., 342 S. W.2d 503, 507[6, 7], where an expert on stopping distance testified that at 60 miles per hour a car travels 88-plus feet per second, and allowing ¾ of a second reaction time, travels 66 feet therein, and added to braking distance of 185 feet, would require a total stopping distance of 251 feet.

Thus, in viewing the evidence in the light most favorable to the plaintiff, as we must, it appears that plaintiff traveling at speed of 60 miles per hour when he first saw or became aware of defendants' truck, estimated at around 200 feet away, traveled 132.3 feet during a reaction time of 1½ seconds while the truck, traveling at 5 miles per hour, moved 7.35 feet per second. In the 3.7 seconds it would take plaintiff's automobile, with brakes applied and traveling at 60 miles per hour to stop, the defendants' truck would travel approximately 34 feet, leaving a distance of only approximately 102 feet in which plaintiff had to stop before collision. Even based upon the 1 second reaction time calculation plaintiff would have only approximately 145.8 feet within which to bring his automobile to a stop before the collision. Under the probative facts of this case, while we do not judicially know the precise distance in which plaintiff could have brought his automobile to a stop before the collision, we have no hesitancy in holding that he could not have stopped under the facts and circumstances in evidence in this case using either reaction time figure of a second or a second

and a half. Johnson v. Bush, Mo.App., 418 S.W.2d 601, 608[16, 17]; McCarthy v. Wulff, Mo., 452 S.W.2d 164, 168[9]; Eaves v. Wampler, Mo.App., 390 S.W.2d 922, 930[17, 18].

We opine that while unquestionably charts dealing with speed and stopping distances of automobiles are helpful and useful implements in determining the nice calculations involved in automobile collision cases (Danner v. Weinreich, Mo., 323 S. W.2d 746, 752[5–7]), the conclusiveness thereof, without more, should not be overemphasized because of the fallible human estimates upon which the application of the chart calculations are based. 9C Blashfield, Cyclopedia of Automobile Law, Section 6237, page 411.

■ Defendants strenuously urge that the "assured clear distance ahead" rule bars a recovery by plaintiff, citing Trantham v. Gillioz, Mo.App., 348 S.W.2d 737 and Nickels v. Borgmeyer, Mo.App., 258 S.W.2d 267. Briefly stated this rule refers to the requirement that a motorist drive at such speed that he is able to stop his automobile within the distance that his headlights make visible objects ahead of him. In Trantham, supra, the owner of the automobile, a passenger therein, acquiesced in the driver not only leaving a well-marked detour to go upon a road he knew to be in the process of construction but also in traveling at a speed of 60 to 70 miles per hour. It was held that there was contributory negligence barring recovery when the automobile struck a 2 to 3 foot high barrier of dirt. These facts constitute a far different situation than those obtaining in the instant case. In fact, in the Trantham case it is recognized that "[o]rdinarily a traveler rightfully upon a public highway may, in the absence of any notice to the contrary, assume or presume that the way ahead is clear and that it may be safely traveled at a reasonable speed. But this rule does not apply if the traveler knows, or should know, that the road is under construction, especially if it is closed to public travel. The rule then is the reverse." 348

S.W.2d 741[3]. See also the pertinent remarks of this court in Thompson v. Byers, 362 Mo. 42, 239 S.W.2d 498, 500[5]. In the present case, it could not be said under the evidence that plaintiff as he started up the hill traveled at an excessive speed or was derelict in not surmising that defendants' tractor-trailer would be slowly traveling up an incline in the middle lane devoid of taillights or other visible warning devices.

In the Nickels case, supra, the facts there revealed that the plaintiff trucker operated his truck with lights not sufficient to reveal a vehicle at least 500 feet ahead under normal atmospheric conditions, offered no excuse whatever therefor. The court, noting his testimony that the truck lights would enable him to see only 50 feet ahead, held him guilty of contributory negligence as a matter of law in driving with defective headlights. This case is not germane to, or controlling over, the facts presented in the instant case.

In the Trantham case, supra, it was pointed out by the court that the "assured clear distance rule" has been rejected by Missouri courts so far as it fixes an inflexible standard applicable in all events and under all circumstances and that speed alone is not necessarily negligence, but rather the facts of the particular case must be taken into consideration.

Thus, in Thompson v. Byers Transportation Company, supra, it was held that the driver of a tractor-trailer, colliding with the rear of another such vehicle stopped on highway pavement at night with no lights burning was not contributorily negligent as a matter of law on theory that he was traveling through fog at excessive speed which prevented him from stopping within distance for which his headlights revealed objects ahead of him. See also Johnson v. Lee Way Motor Freight, Mo., 261 S.W.2d 95, a case involving collision in fog.

In Walker v. Massey, Mo.App., 417 S.W.2d 14, it was held that the driver striking rear of a parked truck would not necessarily have been guilty of contributory negligence as a matter of law notwithstanding that as he approached the parked truck he was driving at such speed that he could not have stopped within the distance his headlights would have revealed the truck under then existing circumstances. In Haley v. Edwards, Mo., 276 S.W.2d 153, the court held that a motorist is not necessarily guilty of contributory negligence as a matter of law solely because he drives at a speed which prevents his stopping within range of his visibility, as other facts and circumstances, such as speed, traffic, highway conditions, visibility of atmosphere, and character of obstruction should be taken into account. Defendants argue that the violence of the impact demonstrates a greater speed of plaintiff's automobile at the time of impact than appeared in evidence. The only evidence in the record to sustain this contention is the damage to plaintiff's automobile as a result of the collision, and we decline to rule that in the face of direct testimony as to plaintiff's speed, we, as a matter of law, should hold that vehicular damage controls over positive, independent, eyewitness testimony. Thompson v. Byers Transportation Company, supra, 239 S.W.2d 500[5]. There was no evidence in this case concerning the estimated speed of plaintiff's automobile based upon skid marks and character of impact such as obtained in Dillenschneider v. Campbell, Mo.App., 350 S.W.2d 260, 266–268 [10–12], [13], [14].

We are convinced, and so hold, that under all the facts and circumstances of this case, i.e., darkness of night, approaching automobile lights, automobiles traveling in outside or slow lane of highway giving some assurance that the center lane was clear, the unexpectancy of a darkened vehicle in the middle or center lane, and the fact that a slow moving vehicle might under some circumstances be more difficult to discern than a stopped vehicle (Ruediger v. American Bus Lines, Inc., Mo. (banc), 426 S.W.2d 4, 10 [9]), a jury issue was presented on the question of plaintiff's

alleged contributory negligence as to speed, lookout and control. Heberer v. Duncan, et al., Mo. (banc), 449 S.W.2d 561, 563–564 [3], [4]; Reed v. Burks, Mo.App., 393 S.W.2d 377, 380 [3, 4]; Shelton v. Bruner, Mo.App., 449 S.W.2d 673, 679–680 [2], [4].

Defendants next complain that the court erred in failing to direct a verdict in their favor because plaintiff's petition failed to state a cause of action in that the action was based on § 304.015, RSMo 1959, V.A.M.S., and the exceptions noted therein were not set forth in the petition, nor supported by the evidence, thereby making the statute applicable in the case. We note that this particular assignment was not raised in the motion for a new trial nor at any time presented to or ruled upon by the trial court; however, defendants contend that under civil rule 55.43, V.A.M.R. this point was not waived. While we have some apprehension as to the correctness of this position (Ezell v. Ezell, Mo.App., 348 S.W.2d 592, 595–596 [2, 3]), we nevertheless examine in depth the merits of such contention. The thrust, as we understand it, of defendants' contention is that, since plaintiff's cause of action evolved out of the above-cited statutory section pertaining to driving on right of highway, traffic lanes and speed, the petition stating such facts under the statutory section was required to negative the exceptions contained therein in order to be valid and effective in law. This is a novel stance, as applied to automobile collision cases dealing with the construction of statutory rules of the road, and no case is cited by defendants as authority for such proposition nor have we been able to discover any. In defendants' first cited case of Wilhelm v. Hersh, Mo. App., 50 S.W.2d 735, the question there involved was the applicability of a statutory duty pertaining to rules of the road for driving from the side of highway into line of moving vehicles in municipalities. The issue of efficacy of pleadings was not involved or alluded to in the case and furnishes no authority for the proposition attributed to it by the defendants.

In Ornder v. Childers, Mo., 327 S.W.2d 913, defendants' next cited case, the question there involved, as an ancillary consideration, was the propriety of a given instruction. Plaintiff pleaded humanitarian negligence in failure to warn and submitted to jury primary negligence, not pleaded, under the applicable statute. The court stated that an action predicated upon a liability given by statute should come within the terms of the statute. This case likewise is of little succor to defendants and does not support the proposition espoused by them.

Defendants' next cited case of Kemper v. Gluck, 327 Mo. 733, 39 S.W.2d 330, dealt with the question of the compensation act and its applicability to the facts there involved. This case lends support for plaintiff's position on the point herein raised by the defendants. On pages 333–334 at paragraph 6 the court there said:

"The general rule is stated in another way. Where an action is at common law and invokes common-law liability only, an exception to such liability created by statute is not an element of the cause of action; it is a matter of defense. * * *

"We conclude that the petition of the plaintiff stated a cause of action within the jurisdiction of the circuit court; that the lack of jurisdiction was an affirmative defense which the defendant should have pleaded but failed to do so."

Defendants apparently misconceive the fundamental basis of plaintiff's cause of action, which is one at common law in tort for negligence. This action basically is not a statutory action, as such, wherein the legal rights afforded flow from or are created by the statute. True, the recitation of facts alleged in a petition in a negligence common law action may be such as to invoke statutory provisions without actually citing the applicable statute (Leek v. Dillard, Mo.App., 304 S.W.2d 60, 64 [5]), but this does not mean that the action is bottomed on the statute itself. Thus, in

Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, 526–527 [8–12], the court said:

" * * * Statutory rules of the road set merely a minimal rather than a maximal standard of care, and they are not necessarily preclusive of common law negligence. * * * And even if the statute did not require such as a minimal precaution, defendant still would be subject to the general rules of negligence." See also Gooch v. Avsco, Incorporated, Mo., 337 S. W.2d 245, 251 [6, 7].

█ Since plaintiff's cause of action is one cognizable at common law, and not one created peculiarly by statute, any exception mentioned in the statute is properly a matter of defense. See Condos v. Associated Transports, Inc., Mo.App., 453 S.W. 2d 682, 686 [1]; Robinson v. Gerber, Mo., 454 S.W.2d 933, 938 [6]. Be that as it may, and in any event, we reject the proposition advanced by defendants as unduly burdening the office of pleadings and it was not incumbent upon plaintiff to allege in his petition the exceptions referred to by defendants in order to state validly a cause of action, §§ 509.040, 509.050, 509.250, RSMo 1959, V.A.M.S.; Anderson v. Dyer, Mo.App., 456 S.W.2d 808, 810 [1]. While it is difficult to understand the rationale of defendants' statement pertaining to the support or the lack thereof in the evidence of the mentioned exceptions, since the assignment relates to pleading and stating a cause of action and not to matters of evidence, we note in passing that defendants' contention concerning the fact that they were properly and lawfully proceeding in the center lane of the northbound traffic lanes on said highway under the provisions of each and every one and all of the specified statutory exceptions cannot be sustained. We do not believe, and so hold, that a vehicle some 5016 feet away from a bifurcation or highway intersection under the circumstances and conditions existent on that highway at that time and place, i. e., defendant Chestnut's admission that traffic was moderate, that he could have changed lanes without creating a hazard

and that it was not necessary for him to be in the middle or center lane in order to turn, comes within the purview of the statute dealing with left turns at highway intersections. This point is ruled against the defendants.

Next defendants contend that the trial court committed prejudicial and reversible error in giving, over defendants' objection, plaintiff's Instruction No. 3 which reads as follows:

"Your verdict must be for plaintiff, James S. Rooney, if you believe:

First, defendant Lloyd Metal Products Company, acting by and through its truck driver, defendant Richard Chestnut, in the operation of its truck, either: drove said truck at a speed of less than 40 miles per hour, or was proceeding on the highway at less than the normal speed of traffic thereon and failed to drive said truck in the right-hand lane for traffic, or drove said truck without any lighted lamps on the rear of the trailer, and

Second, defendants' conduct in any one or more of the respects submitted in paragraph First, was negligent, and Third, as a direct result of such negligence plaintiff sustained damage, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5.

(M.A.I. No. 17.02 modified—tendered by plaintiff)"

Defendants' complaint against this instruction is fourfold and is divided into four separate categories which we will consider in order. The first charges that the instruction misstates the law in peremptorily requiring defendants to drive their truck in the right-hand lane for traffic regardless of the circumstances and the second, akin to the first, contends that the instruction misstates the law in peremptorily requiring defendants to drive their truck at a speed of not less than forty miles per hour regardless of circumstances. Both these charges are somewhat broad and

general and are substantially lacking in specificity. Plaintiff predicated part of the submission of his case to the jury under § 304.010(4) 1965, V.A.M.S., which provides: "On any divided highway designated as part of the federal interstate system, no vehicle shall be operated at a speed of less than forty miles per hour, except when a slower speed is required for safe operation of the vehicle because of weather or other special conditions," and the other part of the submission of the case under § 304.015, subd. 5(3), V.A.M.S., which states: "Upon all highways any vehicle proceeding at less than the normal speed of traffic thereon shall be driven in the right-hand lane for traffic or as close as practicable to the right-hand edge or curb, except as otherwise provided in sections 304.014 to 304.026."

■ Reference to the wording of the instruction demonstrates that it required a finding of negligence by the jury as to one or more of the alleged acts or misconduct of the defendants and it therefore did not rely on the said alleged acts or misconduct as constituting negligence per se. Clearly the plaintiff was entitled to predicate his cause of action against the defendants under common law rights or statutory duties, the violation of which and resultant damage gave rise to a right of recovery in plaintiff. In Condos v. Associated Transports, Inc., Mo.App., 453 S.W.2d 682, 687 [4], it was held that an instruction that if the jury found that the tractor-trailer driver in approaching a private drive intending to turn right and in making a right turn failed to drive as close as practicable to the right-hand edge of the highway and that as a direct result of such conduct the passenger who was in the vehicle which collided with the right-hand side of tractor-trailer and was injured was entitled to recover did not impose an absolute and unqualified duty on the tractor-trailer driver regardless of any other facts and circumstances and was proper. In the Condos case, unlike the instant one, the plaintiff relied on defendants' conduct as being neg-

ligence per se, and did not submit in her instruction a finding of negligence by the jury. In that case it is pointed out that failure to comply with a provision of the statute, in absence of showing of reasonable excuse for its nonobservance, constitutes negligence per se. In Terrell v. McKnight, 360 Mo. 19, 226 S.W.2d 714, on page 717 the court there said:

"[1] Instruction No. 1 combines in the conjunctive, statutory negligence and nonstatutory or common law negligence. That is not improper if the instruction further requires the jury to find that the alleged acts were *negligently* done. The instruction failed to make that requirement and the Court did not err in refusing it.

"[2] Instructions C-3 contains all of the essential portions of refused Instruction No. 1, but supplies the fatal omission in that instruction by authorizing recovery only if the jury find that defendant's truck driver did the acts complained of and that same were reasonably likely to create danger and that in doing them the truck driver failed to exercise the highest degree of care."

■ In the instant case, the evidence adduced by plaintiff in support of the averments of his petition charging negligence against the defendants amply supported the giving of this instruction, and in the respects delineated by the defendants as above set forth as constituting error, we hold that the instruction is not subject to the criticism levied against it. This, for the additional reason that it has been held that where there is no approved instruction applicable, the present rule requires the instruction to be simple, brief, impartial, free from argument, and that it does not require findings of detailed evidentiary facts, Cover, etc. v. Phillips Pipe Line Company, Mo., 454 S.W.2d 507, 510 [2], and that in cases involving statutory violation it is generally sufficient to couch a verdict-directing instruction substantially in the language of the statute. May v. Bradford, Mo., 369 S. W.2d 225, 228 [7].

The third assertion of error against this instruction concerns the submission of part of the issues in the conjunctive, referring to that portion thereof dealing with "proceeding on the highway at less than the normal speed of traffic thereon and failed to drive said truck in the right-hand lane for traffic." Defendants contend that the above violates MAI No. 1.02, which provides: "The practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited." It at once is apparent that this position is without merit, first for the reason that under the statute there was no other intelligible manner in which the submission could be couched, and secondly, because MAI recognize "that some instructions will still have several *elements* which must be submitted in the conjunctive, but these will be in support of a *single theory of recovery or defense.*" (MAI No. 1.02, Committee's Comment, page 7.) Plaintiff was entitled to submit his case to the jury, if supported by evidence, of any violation of the statutory provisions by defendants which proximately caused his injury and damage. The point is ruled against defendants.

Next defendants urge that the posted minimum speed limit of 40 miles per hour was without authority in law and not binding on defendants. It is sufficient answer to this contention to observe that § 304.010, subd. 4 (1965), V.A.M.S., provides authority for the posted speed limit, and it could not be seriously contended that the legislature lacked the authority or power to enact such a law. Defendants' concern as to who posted the said speed limit is of little moment in the consideration of its validity and binding effect on motorists using such highway.

Finally defendants claim that the verdict is so excessive as to demonstrate bias and prejudice on the part of the jury entitling defendants to a new trial. In their briefs filed in this Court defendants urge that the verdict is excessive and requires a remittitur. Since there is no reference to any act of misconduct or improper action occurring on the trial incorporated in defendants' briefs, save for the size of the verdict, an essential element in such an assignment, McConnell v. Pic-Walsh Freight Co., Mo., 432 S.W.2d 292, 301 [18–21], we entertain grave doubt that this point has been preserved for review. Crawford v. Mc-Nece, Mo., 388 S.W.2d 809, 816 [13–15]; Montgomery v. Travelers Protective Assn. of America, Mo.App., 434 S.W.2d 17, 20 [6]. Giving defendants benefit of that which really does not rise to the status of a doubt, we nevertheless examine the contention. Plaintiff, at the time of the collision, was a 64-year-old circuit judge who was in reasonably good health. As a result of the collision he suffered a fracture of the fifth metacarpal bone in the left hand just below the wrist; a fracture of tibia of left leg involving the knee joint; comminuted fracture of the navicular bone in right foot; fracture to the heel; chondromalacia involving left patella; fracture of the fibular malleolus; a mild cerebral concussion; aggravation of previously existing cervical arthritis; cervical strain, and laceration of forehead and head requiring 10 to 12 stitches. Plaintiff was hospitalized for three weeks and received out-patient physical therapy treatments thereafter. The navicular fracture was painful, requiring a boot cast for about three weeks and an elastic bandage thereafter. Due to the fracture line involvement into the joint surface the potential exists for pain and difficulty in walking. Plaintiff wore a glove type cast for three weeks as result of the fracture of metacarpal bone. He wore a cast on his left leg for about a month and a half. He developed pain and stiffness in his neck and wore a cervical collar. He was discharged from the hospital on crutches and used these until March, 1967. Doctor Vilmer, orthopedic surgeon, was of the opinion that the injuries to the left tibia, knee, right foot, and neck were permanent and residual disability would ensue.

Doctor Pickard, orthopedic surgeon, testified to complications and difficulty plaintiff experienced as the result of the injuries such as marked thickening of the right ankle and tarsal area of the foot; color change and change in circulation in right leg; increased coldness in toes of right foot; spasticity in right heel; restriction of motion in right foot; "flexion deformity" of left knee; thickening of left knee joint; thickening of tibial table; reversal of carrying angle of left knee resulting in a bowleg; atrophy of left thigh; some loss of ability to flex left knee; atrophy and limitation of motion in left shoulder; restriction of movement in neck with muscle spasm and loss of lordotic curve of spine; less grip in hand due to fracture; sleeplessness. This doctor testified to the seriousness and permanency of the injuries, and prescribed intensive physical therapy, first in the hospital and thereafter at home. Special corrective shoes were prescribed. He testified that plaintiff's complaint of continual pain since the collision was consistent with the sustained injuries and would "remain with him the rest of his life." Total medical and hospital expenses amounted to $2,323.71. The sum total of plaintiff's disability is greater than the individual parts of his disability because now literally speaking "he doesn't have a leg to stand on." As result of his injuries plaintiff's mode of living has been changed. Instead of ascending stairs in his home he now has his bed made up in the dining room of his home. He never sleeps over 3 hours a night unless he takes a sleeping pill. He was carried onto the bench until the first part of January, 1967. At time of trial he experienced headaches down to his left eye and dizzy spells. He used to work around his house and yard which he no longer can perform. His social and professional activities have been "greatly restricted." He is tired and haggard at the end of the day and has to lie down and is somewhat stooped over. His life expectancy at time of trial was 13.81 years.

After full consideration we conclude that while this is a generous verdict, as the Court stated in Nussbaum v. Kansas City Stock Yards Co. of Maine, Mo., 359 S.W. 2d 335, 342 [7], "While this is a large verdict and perhaps even some remittitur reasonably might have been ordered upon consideration of the extent of plaintiff's recovery * * * we cannot hold that such a verdict indicates misconduct of the jury due to passion and prejudice," we are not prepared to hold, and therefore correspondingly rule, that the amount of the verdict is not unwarranted by the nature and extent of the injuries, and concomitant effects thereof. The principles to be applied and the analysis of factors to be considered in determining the perplexing question of the reasonableness of a verdict are set out in Hart v. City of Butler, Mo., 393 S.W.2d 568, 579–581 [18], [19–22], [23]. See also Snyder v. Jensen, Mo., 281 S.W.2d 802, where in year 1955 an award of $40,000 to 67-year-old railroad switchman with life expectancy of 13.81 years, whose gross yearly wage was $4,186, who incurred medical expense of $1,156.75 and who sustained fractures of a vertebra, bone in heel and tibia and who sustained brain injury was excessive by $5,-000. See also the 1956 case of Moss v. Mindlin's, Incorporated, Mo., 301 S.W.2d 761.

For the reasons set forth above, and based upon the cases hereinabove cited, the judgment of the circuit court is affirmed.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.